**LONG TERM CARE PHARMACY ALLIANCE, Omnicare Inc., and Pharmerica Inc., Appellants,**

v.

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION and Albert H. Hawkins, Commissioner, Appellees.**

No. 11–05–00361–CV.

Court of Appeals of Texas, Eastland.

Sept. 20, 2007.

Rehearing Overruled Nov. 15, 2007.

Amanda C. Gohlke, Robert L. Seibert, C. Dean Davis, Davis & Davis, P.C., Austin, for appellants.

Eugene A. Clayborn, Asst. Office of Atty. General of Texas, Austin, for appellees.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

Long Term Care Pharmacy Alliance, Omnicare Inc., and Pharmerica Inc. filed this action seeking a declaratory judgment that the Texas Health and Human Services Commission (HHSC) and its Commissioner Albert H. Hawkins failed to follow the requirements of the Texas Administrative Procedure Act (the APA)[1] in adopting Section 355.8551(6), a rule that became effective October 5, 2003.[2] Appellants assert the following: (1) that, prior to the adoption of Section 355.8551(6) in 2003 (the 2003 Rule), pharmacies in the Texas Medicaid Vendor Drug Program had been entitled to a delivery fee of $.15 per prescription on all Medicaid prescriptions filled, including those delivered to patients in nursing homes and assisted living centers; (2) that notice of the proposed Section 355.8551(6) earlier in 2003 indicated that the $.15 per prescription would continue to be paid on deliveries to patients in nursing homes and other institutions; and (3) that the substantive change between the proposed rule and the adopted 2003 Rule, which eliminates the delivery fee on deliveries to patients in nursing homes and other institutions, should not have been adopted. According to appellants, the 2003 Rule as adopted should have been re-proposed to allow comment on the substantive change.

The issue in this case—whether a minor amendment to a rule makes moot a challenge to an earlier substantive change in the rule—appears to be one of first impression.

After this lawsuit was filed, HHSC proposed in 2004 some minor changes to Section 355.8551(6).[3] The only change to the challenged portion of the 2003 Rule was to change the term "delivery fee" to "delivery incentive." The trial court held that the revised Section 355.8551(6), which became effective in 2004,[4] superceded the 2003 Rule and rendered appellants' challenge to the 2003 version moot. We hold that the

---

1. The Administrative Procedure Act is found in Tex. Gov't Code Ann. ch. 2001 (Vernon 2000 & Supp.2006). Section 2001.035 provides that a state agency must adopt a rule in substantial compliance with the requirements of Sections 2001.0225 through 2001.034.

2. See 28 Tex. Reg. 8312–13 (2003) (1 Tex. Admin. Code § 355.8551) (Tex. Health & Hum. Servs. Comm'n).

3. See 29 Tex. Reg. 8055–56 (2004) (1 Tex. Admin. Code § 355.8551) (proposed August 9, 2004).

4. See 29 Tex. Reg. 10503 (2004) (to be codified as an amendment to 1 Tex. Admin. Code § 355.8551(6)).

2004 revision to Section 355.8551(6) was an amendment to the 2003 Rule; the revision was not a repeal by implication of the 2003 Rule nor did it substantively change the challenged provision. Therefore, the controversy is not moot. To hold otherwise would mean that an agency could moot a case by amending a rule and replacing it with one that differs only in some insignificant respect. *See Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (holding that defendant city did not moot a case by replacing an ordinance with one that differed only in an insignificant respect). We reverse and remand for a trial on the merits.

## Background Facts

 Medicaid is a health insurance program, jointly operated and funded by the federal and state governments, for the medical care of low-income and other eligible persons. *El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, No. 05–0372, 2007 WL 2457848 (Tex. Aug.31, 2007). In Texas, HHSC is the agency charged with the responsibility for operating the program to conform with the federal guidelines. *Id.* at *1.

In 1998, the Texas Medicaid Vendor Drug Program rules were transferred administratively by the Texas Register from Title 25 of the Texas Administrative Code to Title 1. *See* 23 Tex. Reg. 12660, 12701 (1998). Former Section 35.611(6),[5] which provided a delivery fee of $.15 per prescription on all Medicaid prescriptions filled, became Section 355.8551(6) without change. Former Section 35.611(6) and its replacement, Section 355.8551(6), provided:

A delivery fee shall be paid to approved providers offering no-charge prescription to all Medicaid recipients requesting delivery. The delivery fee is $.15 per prescription and is to be paid on all Medicaid prescriptions filled. This delivery fee is not to be paid for over-the-counter drugs, which are prescribed as a benefit of this program.

In 2002, HHSC proposed and adopted several changes to Section 355.8551, including one that would have completely eliminated the $.15 delivery fee in Section 355.8551(6). HHSC stated that the adopted rule made several changes to Section 355.8551, including

[I]t changes the method of reimbursement for prescription delivery by eliminating the delivery fee and including prescription delivery expenses in the overall fixed component of the dispensing fee for all providers.

The Texas Pharmacy Association, the National Association of Chain Drug Stores, and the Long Term Care Pharmacy Alliance opposed the adoption of the proposed amendments. *See* 27 Tex. Reg. 11739–42 (2002) (to be codified at 1 Tex. Admin. Code § 355.8551). The revised Section 355.8551 was to become effective on December 16, 2002.

To prevent the revisions from becoming effective, the Texas Pharmacy Association and other pharmacies filed a declaratory judgment action contending that the revisions were not adopted in compliance with the APA and seeking an injunction to keep in place the last valid rule (the August 1997 version of Section 35.611(6) that became Section 355.8551(6)). *See Tex. Pharmacy Ass'n v. Tex. Health & Human Servs. Comm'n et al*, No. GN–204–486 in the 126th District Court of Travis County,

---

**5.** *See* 22 Tex. Reg. 5640 (1997), adopted 22 Tex. Reg. 7347 (1997) (to be codified at 25 Tex. Admin. Code § 35.611(6)).

Texas. The district court entered a temporary restraining order that enjoined HHSC and its Commissioner from implementing the rule amendments. The lawsuit was ultimately nonsuited on May 20, 2003, because HHSC filed a new proposed rule on May 12, 2003, that would repeal Section 355.8551 (as revised in 2002) and promulgate a new Section 355.8551. *See* 28 Tex. Reg. 4032–33 (2003) (1 TEX. ADMIN. Code § 355.8551) (proposed May 12, 2003).

### *The 2003 Adoption of Rule 355.8551(6)*

On May 12, 2003, HHSC proposed a repeal of the 2002 version of Section 355.8551 and the adoption of a new Section 355.8551. *See* 28 Tex. Reg. at 4032–33. The proposed new Section 355.8551 was to include a change to Section 355.8551(6) that would read as follows:

> A delivery fee shall be paid, *subject to the availability of appropriated funds,* to approved providers offering no-charge prescription to all Medicaid recipients requesting delivery. The delivery fee is $.15 per prescription and is to be paid on all Medicaid prescriptions filled. This delivery fee is not to be paid for over-the-counter drugs, which are prescribed as a benefit of this program (emphasis added).

*Id.* at 4033.

In its preamble to the new Section 355.8551, HHSC stated that "[t]he changes are intended to reinstate program policy in effect before December 15, 2002." 28 Tex. Reg. at 4032. HHSC made it clear that it was repealing the 2002 version of Section 355.8551(6) and returning to the language of former Section 35.611(6) and its replacement, Section 355.8551(6),[6] except that

HHSC was adding the emphasized phrase "subject to the availability of appropriated funds." *Id.*

Thus, in the proposed 2003 Rule, deliveries to nursing homes and other institutions were included in the $.15 delivery fee. But in the adopted 2003 Rule, those deliveries were eliminated from the delivery fee. Section 355.8551(6), as adopted on September 15, 2003, to be effective on October 5, 2003, provided:

> A delivery fee shall be paid, subject to the availability of appropriated funds[,] to approved providers who certify in a form prescribed by the Commission that the delivery services meet minimum conditions for payment of the fee. These conditions include: *making deliveries to individuals rather than just to institutions, such as nursing homes;* offering no-charge prescription delivery to all Medicaid recipients requesting delivery in the same manner as to the general public; and, publicly displaying the availability of prescription delivery services at no charge. The delivery fee is $.15 per prescription and is to be paid on all Medicaid prescriptions filled. This delivery fee is not to be paid for over-the-counter drugs, which are prescribed as a benefit of this program (emphasis added).

28 Tex. Reg. 8312–13.

TEX. HUM. RES.CODE ANN. ch. 32 (Vernon 2001 & Supp.2006) and TEX. GOV'T CODE ANN. § 531.021 (Vernon Supp.2006) provide HHSC with the authority to administer the Texas Medicaid Vendor Drug Program and to adopt rules to administer the State's medical assistance program. Sec-

---

6. The earlier version of Section 355.8551(6) provided:

> A delivery fee shall be paid to approved providers offering no-charge prescription to all Medicaid recipients requesting delivery.

> The delivery fee is $.15 per prescription and is to be paid on all Medicaid prescriptions filled. This delivery fee is not to be paid for over-the-counter drugs, which are prescribed as a benefit of this program.

tion 32.021(c) requires HHSC to establish methods of administration and to adopt necessary rules for the proper and efficient operation of the State's medical assistance program. Section 32.028(a) provides that HHSC shall adopt reasonable rules and standards governing the determination of fees, charges, and rates for medical assistance payments. Section 32.0281(a). Section 32.0281(d) provides that HHSC must follow the procedures for adopting rules that are set forth in the Texas Administrative Procedure Act found in Chapter 2001 of the Texas Government Code (the APA).

### Appellants' Lawsuit Is Filed

In their original petition for declaratory judgment filed in December 2003, appellants alleged that HHSC and its Commissioner failed to follow the procedures set forth in the APA when HHSC adopted the 2003 Rule. They alleged that HHSC failed to do the following:

(1) to give 30 days notice of its intention to adopt the substantive change eliminating the $.15 delivery fee for deliveries to nursing homes and other institutions as required by Section 2001.023;

(2) to provide in its order adopting the 2003 Rule a reasoned justification for the 2003 Rule as required by Section 2001.033;

(3) to hold a public hearing as required by Section 32.082 of the Human Resources Code before adopting the changed rates.

Appellants also alleged that the 2003 Rule was inconsistent with contracts that existed between HHSC and the pharmacy providers in the Medicaid Vendor Drug Program. Appellants, therefore, requested an injunction prohibiting HHSC from implementing the 2003 Rule and ordering HHSC to pay the delivery fee to all providers in the Medicaid Vendor Drug Program that offer free delivery to Medicaid recipients. In summary, appellants claimed that HHSC deprived appellants of an opportunity to argue against the new rule provision that became the 2003 Rule and eliminated the $.15 delivery fee for deliveries to nursing homes and other institutions. *See* Section 2001.029(a) of the APA (an agency is required to give all interested persons a reasonable opportunity to submit data, views, and arguments before adopting a rule).

In its original answer, HHSC set forth a plea to the jurisdiction, contending that HHSC was immune from suit for appellants' breach of contract claim. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401 (Tex.1997). HHSC asserted that any action involving a claimed breach of contract by an agency must be brought before the state agency under TEX. GOV'T CODE ANN. ch. 2260 (Vernon 2000 & Supp.2006). HHSC also pleaded an affirmative defense, asserting that appellants' claims for damages and attorney's fees were barred by sovereign immunity.

### Amendment of Section 355.8551(6) in 2004

In August 2004, HHSC proposed an amendment to Section 355.8551(6) that changed the term "delivery fee" to "delivery incentive," delineated "legend drugs" as the type of drugs that qualify for a delivery incentive, and added a provision for a "generic drug dispensing incentive." 29 Tex. Reg. at 8055–56. The amended Section 355.8551(6) was adopted in November 2004. 29 Tex. Reg. 10503 (2004). The elimination of the $.15 delivery fee for deliveries to nursing homes and other institutions was not dealt with in the 2004 amendment, and that provision remained unchanged.

In April 2005, appellants filed a motion for partial summary judgment, asking the trial court to enter judgment that HHSC had eliminated the $.15 delivery fee for deliveries to nursing homes and other institutions by adopting a rule that did not comply with the terms and provisions of the APA. In their motion, appellants also requested a judgment that the Section 355.8551(6) that existed prior to the 2003 Rule be declared to be in effect and asked for the injunction sought in their original petition. Appellants then filed an amended original petition for declaratory judgment and an application for injunctive relief that essentially tracked their original petition.

HHSC filed a plea to the jurisdiction and response to appellants' motion for partial summary judgment. In its plea to the jurisdiction, HHSC first urged that sovereign immunity barred appellants' contract and damage claims. HHSC then raised a standing issue, claiming that appellants could not establish a vested interest in the delivery fee incentive because (1) the vendor drug program is limited by the availability of appropriated funds and (2) the delivery fee is only available to "approved providers" who are classified according to Pharmacy Delivery Evaluation Forms that provide that a delivery "to nursing homes or other similar group facilities does not constitute delivery." Finally, HHSC asserted that this case was moot because the 2004 Section 355.8551(6) replaced the 2003 Rule.[7]

At the hearing on HHSC's plea to the jurisdiction, HHSC relied on *Pantera Energy Co. v. Railroad Commission of Tex-* *as,* 150 S.W.3d 466 (Tex.App.-Austin 2004, no pet.), and *Texas Department of Health v. Long,* 659 S.W.2d 158 (Tex.App.-Austin 1983, no pet.), to support its contention that this controversy was moot. The trial court granted HHSC's plea to the jurisdiction, stating to the parties that this matter was moot.

### The Trial Court's Order and Letter Ruling

The trial court's order granting the plea to the jurisdiction does not state a basis for the court's ruling. In a letter sent to counsel prior to entry of the order, the trial court stated that it was "granting the plea to the jurisdiction because the matter [was] moot." The trial court explained that the matter was moot because, during the pendency of the lawsuit, HHSC replaced the 2003 rule with the 2004 amended Section 355.8551(6).

As a preliminary matter, we must determine the effect, if any, of the trial court's letter ruling. There is authority that holds that a letter ruling issued prior to the entry of the trial court's order is not competent evidence of the basis for the trial court's judgment. *Cherokee Water Co. v. Gregg County Appraisal Dist.,* 801 S.W.2d 872, 878 (Tex.1990). Nevertheless, we considered such a letter ruling in *Kendrick v. Garcia,* 171 S.W.3d 698 (Tex.App.-Eastland 2005, pet. denied), distinguishing *Cherokee Water Co.,* but refused to consider a trial court's letter in *Evans v. Smith,* No. 11–04–00263–CV, 2006 WL 133701 (Tex.App.-Eastland Jan.19, 2006, no pet.), relying on *Cherokee Water Co.* and *Davis*

---

7. HHSC also urged that pharmacies that are not "approved providers" do not have a vested interest in the delivery incentive; therefore, this was an additional basis urged for mootness. This is a standing argument and may be addressed at the outset of a trial on the merits. Likewise, the issue of whether the Pharmacy Delivery Evaluation Forms modify HHSC's rules need not be dealt with here. We are addressing only whether the 2004 amendment to Section 355.8551(6) rendered the controversy over the adoption of the 2003 Rule moot.

*v. Huey,* 571 S.W.2d 859, 862 (Tex.1978) (trial court order will be upheld on any applicable theory supported by the record). We believe it appropriate to consider the trial court's letter ruling in this case.

The trial court stated that it considered the matter moot because the 2004 amendment to Section 355.8551(6) replaced the 2003 Rule and the 2003 Rule no longer exists. Both parties have treated the trial court's ruling as having been based on mootness. In reviewing the record, we do not see any other applicable theory that would support the trial court's ruling.

### Analysis

HHSC argues that the trial court was correct because appellants are seeking to invalidate an expired agency rule. We disagree. The October 2003 version of Section 355.8551(6) still exists in an amended form (as amended in 2004). HHSC in its proposed rules in 29 Tex. Reg. 8055 and in its preamble to the November 2004 adoption order (29 Tex. Reg. 10503) stated that it was adopting amendments to Section 355.8551(6), as compared to HHSC's preamble statement in its May 2003 notice that it was repealing Section 355.8551(6) and reinstating a program policy in effect before December 15, 2002. The minor amendments in 2004 did not repeal or replace the portion of Section 355.8551(6) that appellants complain about.

HHSC argues that the circumstances in this case are similar to the sequence of events in *Pantera Energy* and *Long.* Those cases are inapposite because they involved changes to procedural rules, not substantive changes to a rule or minor amendments to a rule. In addition, the challenge in those cases was not as to whether the rules had been properly adopted according to procedures required by the APA.

In *Pantera Energy,* the issue presented in three combined lawsuits was whether an amendment to the Railroad Commission's notice rule was procedural in nature and, thus, applicable to pending applications. If procedural, Pantera had to give notice to the operators and owners of mineral interests on adjacent offsetting tracts. When Pantera filed forty-eight applications seeking to dissolve pooled gas units, the Railroad Commission determined that the applications were an attempt to obtain density exceptions without complying with Railroad Commission rules. The Railroad Commission informed Pantera that it had to notify offset operators and owners of unleased mineral interests of the pending applications. While the forty-eight applications were pending, Pantera filed a declaratory judgment action against the Railroad Commission, seeking a declaration that the then current Rule 38(d)(3) of the Commission did not require such notice to be given and that under that rule Pantera was not required to give notice to anyone except itself. While the declaratory judgment action was pending, the Railroad Commission denied Pantera's applications because Pantera refused to give the notice that the Commission had required.

Pantera then filed two suits for judicial review challenging the Commission's dismissals of its forty-eight applications. While the three causes were pending, the Railroad Commission amended Rule 38(d)(3) to require the notice that it had requested Pantera provide. The issue in all three cases was the same: "[W]hether the amendment to Rule 38(d)(3) [was] procedural in nature and thus applicable to the pending applications." *Pantera Energy,* 150 S.W.3d at 469. The Austin Court of Appeals held that the amendment was a procedural change, not a substantive change. Because the new notice rule was procedural in nature, it could replace the

old rule and be applied to pending litigation. That rendered the issue in *Pantera Energy* moot.

The Austin Court of Appeals in *Pantera Energy* observed that *Pantera Energy* was a mirror image of the situation the court had faced in *Long,* where the legal issue presented in district court was whether the Department of Health was required by its rules to obtain a certificate from the local commissioners' court before granting the City of Austin's application for a municipal landfill. Under the Department's rules in effect at the time the city filed its application, the city was required to include in its application a written confirmation from the commissioners' court that access roads could safely handle the additional traffic that would result from the contemplated landfill operations. Long obtained a temporary injunction prohibiting the Department and the city from proceeding with the scheduled public hearing for the landfill site until the certificate was obtained. While the appeal from the temporary injunction was pending, the Department repealed its rule requiring the certification. The Austin Court of Appeals in *Long* held that agency requirements for inclusion, or not, of items in an application for a landfill are procedural. Thus, the new rule would retroactively govern any pending landfill application. Because the only legal issue was whether an application had to have the certificate, the Austin court in *Long* held that the issue was moot. The *Pantera Energy* court explained the principle in both cases as follows:

> Although New Rule 38(d)(3) added a requirement while the amended rule in *Long* eliminated one, the same principle applies to future steps in pending litigation: that no litigant has a vested right in a procedural remedy.

*Pantera Energy,* 150 S.W.3d at 472–73.

■ In the case before us, the 2003 change in Section 355.8551(6) was substan-

tive, not procedural. Appellants' complaint is that the substantive change in the 2003 Rule was not adopted pursuant to the requirements of the APA. The question is whether the minor amendments to the 2003 Rule that were made in 2004 rendered this matter moot. We conclude that the matter is not moot because the minor amendments in 2004 neither repealed the 2003 version of Section 355.8551(6) nor substantively changed the portion of the 2003 version that is the subject of appellant's complaint.

The decision of the United States Supreme Court in *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida,* 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), provides the guide for this case. The City of Jacksonville had adopted an ordinance that accorded preferential treatment to certain minority-owned businesses in the award of city contracts. The petitioner had filed suit claiming that Jacksonville's ordinance violated the Equal Protection Clause of the Fourteenth Amendment and seeking declaratory and injunctive relief. The district court entered summary judgment for petitioner, but the court of appeals reversed, holding that the petitioner lacked standing to challenge the ordinance establishing the set-aside program. Shortly after the Supreme Court granted certiorari, the city repealed the ordinance and replaced it with another ordinance that differed from the first ordinance by limiting the application of the ordinance to only two minority groups, by changing from 10% set-aside to "participation goals" ranging from 5% to 16%, and by providing five alternative methods for achieving the participation goals instead of only one method. Before addressing whether petitioner had standing, the Supreme Court had to decide whether the issue was moot.

The Supreme Court held that the controversy was not moot. The Court stated that it did not matter that the new ordinance differed in certain respects from the old one:

> Nor does it matter that the new ordinance differs in certain respects from the old one. *City of Mesquite [v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982),] does not stand for the proposition that it is only the possibility that the *selfsame* statute will be enacted that prevents a case from being moot; if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect. The gravamen of petitioner's complaint is that its members are disadvantaged in their efforts to obtain city contracts.

*City of Jacksonville,* 508 U.S. at 662, 113 S.Ct. 2297. The Supreme Court reasoned that the ordinance had not been "sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided." *Id.* at 662, n. 3, 113 S.Ct. 2297. The dissent agreed with the majority that a defendant cannot moot a case simply by altering the law "in some insignificant respect" but was of the opinion that the new ordinance had made material changes and was substantially different from the original ordinance. *Id.* at 670, 113 S.Ct. 2297. In our case, it is clear that the change in the 2004 version of Section 355.8551(6) was insignificant.

The gravamen of appellants' complaint is that HHSC adopted a rule doing away with the $.15 delivery fee for deliveries to nursing homes and other institutions without following the requirements of the APA. The trial court in its letter noted that appellants could have challenged the replacement rule if they "believe[d] that the replacement rule was also improperly adopted." The problem with that reasoning is that HHSC followed the requirements of the APA in adopting the minor amendments in 2004. To adopt the trial court's approach would mean that an agency can moot any challenge to a substantive change in a rule, made without following the requirements of the APA, by adopting a minor amendment to the new rule (following the requirements of the APA) after a suit is filed. To allow such an easy way for an agency to moot a challenge would defeat the purposes of the APA. *See* Section 2001.001.

■ Repeal of a statute by implication is not favored, *Gordon v. Lake,* 163 Tex. 392, 356 S.W.2d 138, 139 (1962), and will not be decreed unless the statutes in question are positively repugnant or manifestly inconsistent. *Mercantile Nat'l Bank at Dallas v. Langdeau,* 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963). The same should be said of rules adopted by agencies. There is no conflict between the challenged portion of the 2003 version of Section 355.8551(6) and the 2004 version of Section 355.8551(6); the 2004 version did not repeal the 2003 version. Appellants' challenge is not moot. Appellants' first issue is sustained.

Because the trial court held that it did not have jurisdiction, the court did not rule on appellants' motion for partial summary judgment. Therefore, we need not address appellants' second issue that the trial court "erred in impliedly denying appellants' motion for partial summary judgment."

### This Court's Ruling

We reverse and remand for a trial on the merits.