ACCEPTED
03-14-00129-CV
5427072
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/27/2015 9:40:05 AM
JEFFREY D. KYLE
CLERK

CAUSE NO. 03-14-00129-CV

\*\*\*

IN THE COURT OF APPEALS

THIRD COURT OF APPEALS DISTRICT

AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/27/2015 9:40:05 AM
JEFFREY D. KYLE
Clerk

\*\*\*

CITY OF NEW BRAUNFELS, TEXAS; GALE POSPISIL, ROBERT CAMARENO,
TOM WIBERT and MARY QUINONES

Appellants,

V.

GARRISON MAURER, d/b/a COMAL TOWING;
JERAMIE HERNANDEZ d/b/a JJ TOWING and
ROBERT FLEMING, d/b/a PRO CARE WRECKER SERVICE

Appellees,

APPELLANTS' OPPOSED MOTION TO DISMISS ENTIRE CASE AS MOOT

LAW OFFICES OF RYAN HENRY, PLLC
Ryan S. Henry
State Bar No. 24007347
1380 Pantheon Way, Suite 215
San Antonio, Texas 78232
210-257-6357 (Telephone)
210-569-6494 (Facsimile)
Ryan.henry@rshlawfirm.com
ATTORNEY FOR APPELLANTS

1

## CERTIFICATE OF CONFERENCE

I certify that I attempted to confer with counsel for Co-Defendants in this case and have been unsuccessful in doing so. The Co-Defendants are not part of this appeal, but since the motion is to dismiss the entire case as to the City Defendants and not just the appeal, I attempted to confer with them as well. I also certify that I conferred with Plaintiffs'/Appellees' attorney of record in this appeal via telephone. He advised he could not say whether he was opposed or unopposed at this time, even after providing him a copy of the proposed motion. As a result, the City assumes he is opposed to this motion to dismiss the entire case as moot.

## CERTIFICIATE OF SERVICE

I certify that a true copy of this document has been sent by regular U.S. Mail unless otherwise indicated, to the person(s) listed below on the 26th day of May, 2015.

Mr. Daniel P. McCarthy                          Fax No. (210) 979-8734
MCCARTHY LAW FIRM P.C.                    *and to* dan@mccarthy-law.com
10001 Reunion Place, Suite 640
San Antonio, Texas 78216
***Attorney for Plaintiffs***

Mr. Samuel V Houston, III                       Fax No. (210) 826-0075
Houston Dunn, PLLC                               *and to* sam@hdappeals.com
4040 Broadway, Suite 440
San Antonio, Texas 78209
***Attorney for Plaintiffs***

Mr. Ricardo H. "Richard" Silvas                Fax No. (210) 236-5420
4538 Centerview Suite 240                        *and to* richard@rsilvas.com
San Antonio, Texas 78228
***Attorney for Defendant New Braunfels Wrecker Service, LLC***
***Joe Medillin d/b/a New Braunfels Towing Company***

Mr. Troy D. Burch, Jr.                             Fax No. (830) 629-0953
BURCH LAW FIRM                                    *and to* tburch@burchfirm.com
328 S. Seguin Ave.
New Braunfels, Texas 78130
***Attorney for Hill Country Custom Towing***

Mr. David G. Pfueffer                          Fax No. (830) 629-2161
BRAZLE AND PFUEFFER LLP                         *and to* dpfeuffer@nblawyers.net
170 E. San Antonio Street
New Braunfels, Texas 78130
***Attorney for Kahlig Enterprises, Inc. d/b/a Bluebonnet***
***Collision Service a/k/a Bluebonnet Motors***


/s/ _Ryan Henry_____
RYAN S. HENRY

3

MAY IT PLEASE THE COURT:

NOW COMES Appellants/Defendants City of New Braunfels, Gale Pospisil, Robert Camareno, Tom Wibert and Mary Quinones ("City Defendants") and files this opposed motion to dismiss this case as moot, and would respectfully show the Court the following:

## Summary

The crux of this case turns on four separate towing contracts awarded to four separate towing companies who were placed on a non-consent tow list created from RFP #13-001. C.R. 10. The contracts in question expired on December 31, 2014 by their own terms. C.R. 32. A new ordinance, No. 2015-04, took effect on May 1, 2015 which dispenses with the system utilized by the City in awarding the four prior contracts and adding anyone to the list. Please find attached as Exhibit A, a certified copy of Ordinance No. 2015-04.

With a new regulatory process beginning which does not use contracts and the contracts which made the basis of this suit no longer being in place, this case has become moot. Appellants hereby move to dismiss the entire case as moot.

## Factual Recap & Arguments

### Relief Requested is Prospective Only

It is important to note that Maurer and the other Plaintiffs are not seeking damages for being left off the list and expressly stated they are not suing to force the

4

City to place them on the list. C.R. 235, para. 8. They state "Plaintiffs seek prospective injunctive and declaratory relief that would prohibit the City from continuing to operate under the contracts it awarded under the RFP. ….Plaintiffs have intentionally not plead for monetary damages, such as lost profits or loss of business opportunity, because it would invoke sovereign immunity." C.R. 244 para. 21. "Plaintiffs' seeks this Court to declare void the actions taken by The City of New Braunfels through its city council at the city council meeting on December 10, 2012 in the awarding the contracts to the Defendants…" C.R. 244 para. 22.

The towing contracts and the list expired by their own terms on December 31st of 2014. C.R. 32. The Plaintiffs are seeking prospective relief only to prevent the City from utilizing the non-consent tow call list (which no longer exists). C.R. 14-16. They seek to hold the list void *ab initio.* C.R. 16. They bring suit against the City individuals for *ultra-vires* claims, which can only be prospective in nature under *City of El Paso v. Heinrich*, 284 S.W.3d 366, 376 (Tex. 2009). C.R. 9, 50-51. As a result, all of the relief sought is to prevent and control future action, not for anything allegedly lost in the past. The future action is now dictated by the ordinance which moots their claims for allegedly not following competitive bidding requirements. The ordinance was not enacted until after the contract and list expired by their own terms.

**Mootness Generally**

As the court is well aware, the mootness doctrine prevents courts from rendering advisory opinions, which are outside the jurisdiction conferred by Article II, Section 1 of the Texas Constitution. See *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000). A controversy must exist between the parties <u>at every stage</u> of the legal proceeding, including the appeal. *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002) (Emphasis added).

An issue may become moot when a party seeks a ruling on some matter that, when rendered, would not have any practical legal effect on a then-existing controversy. See *In re H & R Block Fin. Advisors, Inc*., 262 S.W.3d 896, 900 (Tex. App.--Houston [14th Dist.] 2008, orig. proceeding); *City of Farmers Branch v. Ramos*, 235 S.W.3d 462, 469 (Tex. App.--Dallas 2007, no pet.). When an appeal is moot, a court must set aside the judgment and dismiss the cause in its entirety. *City of Fort Worth v. Pastusek Indus., Inc*., 48 S.W.3d 366, 371 (Tex. App.--Fort Worth 2001, no pet.).

An appellate court is prohibited from deciding a moot controversy. See *Nat'l Collegiate Athletic Ass'n v. Jones,* 1 S.W.3d 83, 86 (Tex.1999). This prohibition is rooted in the separation of powers doctrine in the Texas and United States Constitutions that prohibits courts from rendering advisory opinions. See *Nat'l*

*Collegiate,* 1 S.W.3d at 86; see also *Trulock v. City of Duncanville*, 277 S.W.3d 920, 923-24 (Tex. App.—Dallas 2009, no pet.).

**Contracts are Moot**

When a contract expires and is no longer in effect or when it has been superseded by an amended contract, a dispute on the contract becomes moot. *Hutto Citizens Group v. County of Williamson & Waste Mgmt. of Tex.*, 2009 Tex. App. LEXIS 5690,2009 WL 2195582 (Tex. App. -- Austin, July 23, 2009); *Meeker v. Tarrant County College Dist.*, 317 S.W.3d 754, 760, (Tex. App. -- Fort Worth 2010); See, e.g., *Day v. First City Nat'l Bank of Houston*, 654 S.W.2d 794, 795 (Tex. App.--Houston [14th Dist.] 1983, no writ) (stating that a case is moot when the actions sought to be enjoined have been fully performed). A suit to enjoin the performance of a contract becomes moot after the contract has been fully performed. See *Hulett v. West Lamar Rural High Sch. Dist.*, 232 S.W.2d 669, 670 (Tex. 1950). When a request for injunctive relief becomes moot because the action sought to be enjoined has been accomplished, a request for declaratory relief also becomes moot. *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993); *Labrado v. County of El Paso*, 132 S.W.3d 581, 589 (Tex. App. -- El Paso 2004). All of the contracts at issue have expired by their own terms and are no longer in effect.  As a result, the claims are moot.

**List is Moot as New Ordinance was passed**

A chapter of the City's original ordinance (Chapter 138, Article V, Section 138-122) was repealed prior to the creation of the complained of non-consent tow list. C.R. 119. It utilized a specific rotation system for placement on the list. No ordinance regulation was therefore in effect at the time of RFP 13-001, which sought to utilize a contract agreement to control non-consent tows. The City sent out the RFP, received responses, reconsidered whether it wanted to use a single-source tow company, and awarded four contracts instead of one. C.R. 122. However, after the expiration of the four contracts under the list, the City enacted a completely new ordinance, No. 2015-04. Ex. A.

A significant alteration in the law on a subject can render a controversy moot. *Trulock v. City of Duncanville,* 277 S.W.3d 920, 927 (Tex. App.—Dallas 2009, no pet.)(Citing *Ne. Fla. Chapter of Associated Contractors,* 508 U.S. at 662 n. 3, 113 S. Ct. 2297) (ordinance must be significantly altered or case not moot on appeal). When the actions made the basis of this lawsuit occurred, no regulation was in effect. The City could create and assign whoever it wished to the non-consent list but chose to use an RFP process. However, the contracts entered into at the end of this process expired by their own terms. Then, effective May 1, 2015, a completely new regulation applied, thereby changing the regulatory landscape again and the method under which non-consent tows are awarded.

As a result, Plaintiffs' claims for relief have become moot. They sought to enjoin the enforcement and execution of the four contracts awarded to competitors, which have now expired under their own terms. They sought to enjoin the use of the awarded list, which has expired and is now superseded by the new ordinance. They sought to require compliance with competitive bidding laws they felt applied, however the ordinance no longer utilizes a competitive bidding element. The legislative findings expressly state the City wishes to abandon a contract system for incident management tows and reinstate a rotation list system. Ex. A, p. 2.

Ordinance 2015-04 states that the rotation list shall be created on an annual basis, starting on May 1st of each year. Ex. A, Sec. 138-132 p. 11.  Applications from tow truck operators shall only be accepted within a defined time period each year and shall be submitted to the Chief of Police. Ex. A, Sec. 138-132(b)-(c). Any tow-truck operator who qualifies under the regulation requirements "will be placed on the rotation list system for one year, subject to their rotation assignment which will be determined by the Police Department."  Ex. A, Sec. 138-132(e). All qualifying operators "shall be placed on the rotation list." Ex. A, Sec. 138-133(a). A lottery will be held if an odd number of operators are on the list to determine who gets an extra rotation. Ex. A, Sec. 138-133(b). It is up to Plaintiffs to qualify for the list by ensuring compliance with all regulation requirements. However, if they qualify, they are placed on the list with everyone else and are not subject to the same types of

9

actions complained of in the lawsuit. As a result, the claims are moot. No relief can be awarded which will dispel a current controversy.

It is important to note that the mootness is not caused purely because a new ordinance was passed. The ordinance was not passed and did not become effective until after the contracts made the basis of this suit expired by their own terms. The expiration of the contracts alone qualifies as mooting the case. However, in addition to that, the enactment of the ordinance also mooted the case independently of the mootness caused by the expiration of the contracts. Either basis, standing alone, is proper to moot the claims. Both standing together creates a multitier mootness.

**Texas Open Meetings Act Claims are also Moot**

Plaintiffs bring suit under the Texas Open Meetings Act ("TOMA") attempting to hold the contracts and list void. C.R. at 129. Declaring a meeting-agenda notice violated TOMA cannot have any practical legal effect on a currently-existing controversy when it would only void contracts and a list that have previously been superseded or expired. *Meeker v. Tarrant County College Dist.*, 317 S.W.3d 754, 761 (Tex. App. -- Fort Worth 2010). An issue becomes moot when a party seeks a ruling on some matter that, when rendered, would not have any practical legal effect on a then-existing controversy. See *In re H & R Block Fin. Advisors, Inc.,* 262 S.W.3d 896, 900 (Tex. App.--Houston [14th Dist.] 2008, orig.

10

proceeding); *City of Farmers Branch v. Ramos*, 235 S.W.3d 462, 469 (Tex. App.--Dallas 2007, no pet.). Stated another way, an issue is moot if it becomes impossible for the court to grant effective relief. *H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (Citing *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001)).

Plaintiffs' claims under TOMA are to void action which is no longer relevant. Under the TOMA provision of the petition, the Plaintiffs state "Plaintiffs' seeks this Court to declare void the actions taken by The City of New Braunfels through its city council at the city council meeting on December 10, 2012 in the awarding the contracts to the Defendants." C.R. 129. That is the extent of the basis of their TOMA claims. As noted above, the contracts expired by their own terms and the City is no longer using contract based regulation for non-consent tows. Plaintiffs sought to prevent selection of RFP awards behind "closed doors", however the selection process used now is that qualified applicants are placed on the list by the Police Chief. It is the Chief who makes decisions (subject to the ordinance), but those decisions also are not based on a competitive bid. The TOMA applies to the governing body, not individual staff members. Tex. Gov't Code §551.001(3)-(4) (definition of governmental body and meeting) and §551.002 (the governmental body must hold its meetings in public). No open meetings issues come into play since there is no competitive bidding and the ordinance dictates who is on the list,

11

not an RFP award. As a result, the new ordinance moots the TOMA claims presented by the Plaintiffs.

**Prayer**

Defendants City of New Braunfels, Gale Pospisil, Robert Camareno, Tom Wibert and Mary Quinones prays that this court grant their motion to dismiss this entire case as moot and Plaintiffs take nothing from this cause of action. Defendants pray this court dismiss all of Plaintiffs' claims against all the City Defendants with prejudice. This is not a motion to dismiss merely the appeal, but a motion to dismiss the entire case as moot. Should the court not consider the case moot, the Defendants pray the court consider the arguments presented in their brief on the merits and retain the appeal.

City Defendants seek dismissal of the entire case against them, costs should be allocated to the party incurring same, and there is no need for an expedited mandate. Defendants prays for such further relief, in law or in equity, it may show themselves justly entitled to.

SIGNED this 26th day of May, 2015.

Respectfully submitted,

LAW OFFICES OF RYAN HENRY, PLLC
1380 Pantheon Way, Suite 215
San Antonio, Texas 78232
(210) 257-6357
(210) 569-6494 (Facsimile)
Ryan.Henry@RSHlawfirm.com

By: _____ /s/ _____
RYAN S. HENRY
State Bar No. 24007347
COUNSEL FOR DEFENDANTS

13

# CERTIFICATION

I, Patrick D. Aten, City Secretary for the City of New Braunfels, Texas, do hereby certify that I am the custodian of the official records for the City of New Braunfels, Texas, and that a true and correct copy of Ordinance Number 2015-4, of the City of New Braunfels, Texas, is hereby attached herewith.

Dated this 1st day of May, 2015.



Patrick D. Aten
City Secretary
City of New Braunfels, Texas

EXHIBIT
A

**AN ORDINANCE OF THE CITY OF NEW BRAUNFELS, TEXAS, AMENDING CHAPTER 138 "VEHICLES FOR HIRE," ARTICLE V. "VEHICLE STORAGE FACILITIES AND TOWING OF VEHICLES," BY ADOPTING A NEW ROTATION LIST SYSTEM FOR INCIDENT MANAGEMENT TOWS; PROVIDING A SAVINGS CLAUSE; PROVIDING FOR A SEVERABILITY CLAUSE; AND DECLARING AN EFFECTIVE DATE.**

WHEREAS, the 80th Texas Legislature (2007) amended Chapter 2303 "Vehicle Storage Facilities" and adopted Chapter 2308 "Vehicle Towing" of the Texas Occupations Code; and

WHEREAS, the provisions in Chapter 2303 and 2308 provide for the permitting and regulation of vehicle storage facilities and the towing of vehicles, including nonconsent tows which include incident management tows; and

WHEREAS, the City of New Braunfels ("City") is a home rule municipality given broad discretionary powers under the Texas Constitution to regulate for the public peace, health, safety, and general welfare of its citizens; and

WHEREAS, the City of New Braunfels intends to obtain twenty four hour, seven days per week towing/wrecker and storage service for the City of New Braunfels in order to provide for the safety of citizens and to safeguard their property; and

WHEREAS, the City desires to abandon a contract system for incident management tows and reinstate a rotation list system that is more effective and efficient than the pre-existing 2009 ordinance based rotation list system for incident management tows.

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF NEW BRAUNFELS, TEXAS:

SECTION 1: That Chapter 138 "Vehicles for Hire," Article V be renamed "Vehicle Storage Facilities and Incident Management Tows" and be hereby amended and adopted as follows:

ARTICLE V. VEHICLE STORAGE FACILITIES AND INCIDENT MANAGEMENT TOWS

**Sec. 138-121. Compliance with State Law.**

(a) Any person or entity engaged in operating a vehicle storage facility, as that term is defined in Section 2303.002(8) of the Texas Occupations Code, within the city limits of New Braunfels shall comply with the provisions of State law, including Chapter 2303 of the Texas Occupations Code and any rules or regulations with regard to the same adopted by the Texas Department of Licensing or Regulation.

(b) Any person or entity engaged in operating a tow truck, as that term is defined in Section 2308.002(11) of the Texas Occupations Code, within the city limits of New Braunfels shall comply

with the provisions of State law, including Chapter 2308 of the Texas Occupations Code and any rules or regulations with regard to the same adopted by the Texas Department of Licensing and Regulation.

**Sec. 138-122. Definitions.**

*Abandoned vehicle* means the condition of being abandoned as defined in the Texas Transportation Code, Chapter 683 as amended.

*City controlled vehicle* means those vehicles owned, leased or otherwise physically and/or lawfully under the City's control, including vehicles seized by the NBPD as evidence or for some other lawful police purpose.

*Consent tows* means the towing of a motor vehicle with the consent of the vehicle owner, operator, person in possession, custody or control of the vehicle, or the lien holder.

*Disabled vehicle* means a vehicle which has been rendered unsafe to be driven as the result of some occurrence other that a wreck, including but not limited to mechanical failures or breakdowns, fire, vandalism or a vehicle which is in a safe driving condition, but the owner is not present or permitted to drive so as to reasonably necessitate that the vehicle be removed by a wrecker.

*Winch fee* means fees incurred for additional winching of vehicles other than normal winching onto a flatbed rollback-style wrecker. (Example: winching vehicles from ditches, ponds, or mud.)

*Drop fee* means the fee charged when a consent-tow vehicle is completely hooked up to a wrecker and ready to be immediately moved, however the vehicle owner/representative decides not to have the vehicle towed by the on-call wrecker. (Example: an on call wrecker is called and hooked up to an abandoned vehicle. The driver arrives with a can of gas after the wrecker has hooked up the vehicle. The wrecker may still charge a "Drop Fee".)

*Incident management tow* means the towing or other transportation of a vehicle by a tow truck which is the result of a police officer exercising his/her authority to effect the removal of said vehicle pursuant to state law and/or this ordinance.

*Nonconsent tows* means a tow of a motor vehicle that is performed without the consent of the owner or operator of the vehicle or by a person who has possession, custody, or control of the vehicle, and includes incident management tows.

*Operator* means an individual, association, corporation or other legal entity that controls, operates or directs the operation of one or more tow trucks over a public street or highway. It includes the person operating the tow truck/wrecker regardless of whether or not the individual owns the truck.

*Public roadway* means a public street, alley, road, right-of-way, or other public way, including paved and unpaved portions of the right-of-way.

## Sec. 138-123. Incident Management and Non-consent Tows- Authority.

A police officer of the City of New Braunfels is hereby authorized to order removal of a vehicle, require the driver or other person in charge of a vehicle to move the same or have the vehicle removed by the towing Operator on the rotation list to the nearest place of safety or to the premises of the towing Operator that meets the criteria in this ordinance, or as otherwise directed by the New Braunfels Police Department, under the following circumstances:

(a) When any vehicle is left unattended upon any bridge, viaduct or causeway, or in any tunnel where such vehicle constitutes an obstruction to traffic;

(b) When any vehicle is otherwise legally parked so as to block the entrance to any private driveway;

(c) When any vehicle is found upon a street and a report has been previously made that the vehicle has been stolen or a complaint has been filed and a warrant thereon issued charging that such vehicle has been embezzled, or there are reasonable grounds to believe the vehicle is stolen;

(d) When any such officer has reasonable grounds to believe that any vehicle has been abandoned;

(e) When a vehicle upon a street is so wrecked or disabled and because of the wreck or disability its normal operation is impossible or impractical; or

(f) The person or persons in charge of the vehicle are incapacitated by reason of physical injury or other reason to such extent as to be unable to provide for its removal or custody or are not in the immediate vicinity of the wrecked or disabled vehicle;

(g) When any such officer arrests any person driving or in control of a vehicle for an alleged offense and such officer is by this Code or other law required to take the person arrested immediately before a magistrate and it is unsafe to leave the vehicle unattended at the scene, or the vehicle is being seized as evidence;

(h) Whenever any such officer finds a vehicle standing upon a street, or public or private property in violation of any State law or local ordinance;

(i) When the owner or operator of the vehicle consents;

(j) When, in the opinion of a police officer, said vehicle constitutes a hazard or interferes with a normal function of a governmental agency;

(k) When, in the opinion of a police officer, the safety of said vehicle is imperiled by reason of any catastrophe, emergency or unusual circumstance;

(l) When any vehicle is found to be a junked vehicle;

(m) When the vehicle is parked in violation of Chapter 126, Article VII-Parking, as amended, of the Code of the City of New Braunfels; or

(n) When the operator of a motor vehicle is requested to show proof of financial responsibility on that vehicle and, in the opinion of a police officer, is unable to establish financial responsibility under Section 601.051 of Texas Transportation Code.

(o) Where otherwise authorized by law.

## Sec. 138-124. Operator Responsibility.

Operator shall perform all necessary work and administration for the removal from the public streets, ways or other public property in the City of New Braunfels, and from private property when directed by the Police Department or duly authorized representative, of vehicles which have been abandoned, disabled, involved in collisions, parking violations, vehicles to be seized for evidence, prisoners' vehicles and disabled City owned or City leased vehicles and cleaning up an accident scene. Vehicles

will be stored in a local vehicle storage facility on non-consent tows. For consent tows, see paragraph (g).

(a) Any person or entity having an incident management towing permit issued by the State pursuant to Chapter 2308 of the Texas Occupations Code shall be eligible for inclusion in the City's rotation list system established pursuant to (a) above; provided however, that the person or entity makes an application with the Police Department and complies with the rules, regulations and procedures established by the Chief of Police pursuant to the authority granted under state law and this ordinance. Any person or entity failing to maintain a valid incident management towing permit shall be automatically removed from the rotation list without the necessity of the hearing process provided for in this ordinance.

(b) The tow truck Operator responding to an incident management tow must be operated by a driver that has a valid incident management towing Operator's license issued by the State pursuant to Chapter 2308 of the Texas Occupations Code. Any person or entity failing to use tow truck Operators that have a valid incident management towing Operator's license issued by the State shall be automatically removed from the rotation list by the Chief of Police without the necessity of the hearing process provided for in this ordinance.

(c) Operator shall be available 24 hours per day seven days per week, subject to assignment or dispatch by the Police Department, to cover the areas of City of New Braunfels as needed. Operator must maintain at its storage facility an onsite office. The Operator of a participating storage facility must make impounded vehicles available for release 24 hours a day, within one hours notice. The Operator must have an adequate number of employees to meet their responsibilities. The Operator must have a publicly listed telephone number which is answered 24 hours a day by the operator or an employee. Use of an answering machine is prohibited.

(d) Operator shall furnish the Police Department with personnel data, fingerprints and photographs of all wrecker drivers in its employment. Further, Operator agrees to update this information as new or additional personnel are employed. This data is required to be furnished within 72 hours of such employment.

(e) Operator must employ a minimum of four (4) drivers that are qualified pursuant to the requirements of this agreement and applicable state law. Drivers can either be full-time or part-time employees.

(f) At the time of application, the Operator agrees to submit a list which includes the following:
   (1)    The make, model, vehicle identification number and TDLR identification number of each vehicle to be used in performing services under this ordinance and
   (2)    The name, driver's license and TDLR license number and copies of such, of any/all drivers assigned to the wreckers, but no less than four (4) drivers.

(g) Any wrecker dispatched pursuant to a request from the New Braunfels Police Department must arrive on the scene within **twenty-five (25) minutes** of being dispatched.

(h) Under no circumstances will the Operator make recommendations concerning where a vehicle should be towed or repaired, except as expressly allowed herein. In the event of consent tows the

owner of the vehicle will make the decision and the destination of the vehicle will be written on all required forms at the scene. Operator will tow all non-consent tow vehicles to the designated/ approved Operator's storage lot, unless otherwise directed by the New Braunfels Police Department.

(i) A towing company that makes an incident management tow shall tow the vehicle to a vehicle storage facility that is operated by a person who holds a license to operate the facility under Chapter 2303 unless the towing company agrees to take the vehicle to a location designated by the vehicle's owner.

(j) Operator agrees that all fees for towing under this ordinance shall be collected from the owner or person in charge of said vehicle upon completion of tow. Owner or person in charge includes the vehicle owner, operator, person in possession, custody or control of the vehicle, or the lien holder, but this does not include the City of New Braunfels, unless the vehicle is a city-controlled vehicle and the City has exceeded its allotted number of free tows. Operator agrees to submit to City of New Braunfels Police Department monthly a copy of all invoices for tows occurring under this ordinance to allow the Police Department to verify that Operator is charging applicable fees to the owner or the person in control of the vehicle. Towing tickets must be submitted for review within 30 days from their last on-call day.

(k) Operator agrees that if it inappropriately charges in excess of the amounts as stated in this ordinance, Operator will be in violation of this ordinance. The appropriate and prompt refund will be made to the vehicle owner. Operator agrees that any complaints regarding billing which arise out of this ordinance shall be reported to the Chief of Police or his/her designee within 5 days of the date the Operator receives the complaint.

(l) Upon receipt of a complaint concerning damage to a vehicle or its contents towed by operator which occurs during a tow, the Operator will indemnify the City and shall immediately accept responsibility and liability. (See Section 138-131) Operator agrees that any complaints received shall be reported to the Chief of Police or his/her designee within 5 days of the date the Operator receives the complaint.

(m) VEHICLE STORAGE NOTIFICATION NOTICE: Operator will attempt to notify vehicle owner by telephone or cellular phone within 24 clock hours upon completion of a tow. Operator shall notify owner in writing within 48 clock hours after completion of a tow. Where the Operator fails to give written notice to the vehicle owner within 48 hours as required in this subparagraph, the Operator shall not charge or collect from the vehicle owner, any storage fees for that time including the initial 48 hour period, that the Operator was in violation of this subparagraph, but may charge storage fees for that time after the vehicle owner receives written notice.

(n) Operator will be responsible for all title paperwork and subsequent auction of all unclaimed vehicles. Operator will supply a list and applicable documentation of unclaimed vehicles to the New Braunfels Police Department for review, two weeks prior to the auction. Auctions shall comply with TDLR guidelines.

(o) By Operator submission of an application, Operator represents to the City that it is currently in compliance and will remain in compliance during the term of its participation in the City's rotation list

system, with all federal, state and local laws, orders and regulations pertaining to the operation of a tow truck.

(p) All drivers shall be dressed in a high visibility uniform with name and company badge/patch and TDLR prescribed credentials.

(q) Operator shall either own or have an exclusive lease to and have registered with the Texas Department of Licensing and Regulation in Operator's name at least 4 tow trucks, one of which is a heavy duty wrecker as defined herein. Acceptable written documentation must be attached to application as specified in section 138-132 below.

(r) Operator cannot advertise for a body shop not owned by the Operator on tow trucks, equipment or employees.

(s) There will be no subcontracting with other wrecker companies allowed with the exception of specialty equipment such as a bobcat, hazmat, loaders or other construction type equipment for a major scene.

(t) The City may inspect Operator's records at any time to ensure that Operator meets the minimum qualifications required under this ordinance.

(u) Operator shall make wreckers, other equipment, storage facilities and on-site storage facility office available for inspection when ordered by the City of New Braunfels Police Department.

(v) If Operator fails to pay any city ad valorem or sales taxes, or any fines, fees, or other amounts due the city in a timely manner, the Chief of Police will automatically suspend the Operator from the rotation list system until the amounts due are paid and without the necessity of the hearing process provided for in this ordinance.

## Sec. 138-125. City Responsibilities.

(a)     The City will direct all requests for wrecker service under this Ordinance to the Operator;
(b)     The City shall tape all calls requesting wrecker service;
(c)     The City shall maintain a log book (open for inspection at all reasonable times) listing the date and time for each tow.

## Sec. 138-126. Wrecker/Tow Truck Technical Requirements.

(a)     Each tow truck/wrecker shall have brakes that meet manufacturer's braking specifications when performing under all load conditions.

(b)     All wreckers shall have damage free towing attachments, hydraulic or mechanical wheel lift with a lifting capacity of not less than two thousand five hundred (2,500) pounds; hydraulic or mechanical boom with a rated lifting capacity of not less than eight thousand (8,000); or a flat bed vehicle without boom with at least 3/8" cable of not less than 100' length and safety chains.

(c)     Safety mechanisms of the tow truck/wrecker, including but not limited to, all headlights, tail lights, turn signals, brakes, brake lights, hazard lights, flashing warning lights, windshield wipers, wiper blades, handles opening doors and windows, and tires shall operate and/or be in good state of repair.

(d)     All tow trucks/wrecker shall operate within the applicable recommended towed vehicles manufacturer's safety policies and procedures and state laws.

(e)     When towing a vehicle more than 500 feet, wrecker shall use a two bar with pins of any kind, or any other method of attachment. After 500 feet or sooner, the wrecker Operator must drop the vehicle and re-hook it following all safety procedures established by this section and by the manufacturer of the vehicle being towed.

(f)     Each tow truck/wrecker must meet the safety requirements of all other applicable statutes in addition to meeting the safety requirements of this ordinance.

(g)     Operator agrees that all vehicles and/or other equipment used by its employees will meet the above safety requirements.

## Sec. 138-127. Required Wrecker Equipment.

Each wrecker shall carry the following as minimum standard equipment:
(a)     A tow sling and hydraulic lift which is sufficient to prevent the swinging of any equipment and/or vehicle being transported and/or towed. This subsection does not apply to a vehicle carrier or rollback unless the wheels of a vehicle being towed are in contact with the ground. In the event that a self-contained non-propelled towing device, or some other form of auxiliary device is used, the vehicle to which that device is attached and which is providing the motive and braking forces, does not need to provide this equipment.

(b)     5/16-inch link steel safety chains for wreckers with a gross vehicle weight of 10,000 pounds or less and 3/8-inch Hy-test steel chains or their equivalent for tow trucks with a gross vehicle weight over 10,000 pounds. These link sizes are minimums.

(c)     All wreckers shall carry one ten pound or two (2) five pound type ABC fire extinguishers. The fire extinguishers shall be properly filled and located so they are readily accessible for use. All fire extinguishers shall be rechargeable, 2A:10BC Dry Chemical, UL/FM listed and in compliance with NFPA standard #10, 1998 edition and shall be so labeled by a national testing laboratory.

(d)     One crowbar or wrecking bar of not less than thirty-six (36) inches in length with a wedge head.

(e)     One broom of a type designed for pushing with an eighteen (18) inch head, and a handle of not less than thirty-six (36) inches.

(f)     One flat-edge shovel of at least nine (9) inches with a handle of not less than thirty-six (36) inches.

(g)     A box or bucket to carry glass and/or debris removed from accident scenes.

(h)     Rope or strap suitable for securing doors, hoods, trucks, etc.

(i)     A functioning spotlight or flashlight.

(j)     Outside rearview mirrors on both sides of truck.

(k)     All wreckers must be equipped with emergency lights visible from all directions and shall be rotating or strobe type lights.  The lights shall be in accordance with state law.

(l)     Three (3) portable red emergency reflectors, orange cones or flares.

(m)     Five (5) gallons of absorbent material.

(n)     Safety chains must be used on all tows.

(o)     All tow trucks with a slip-in-bed must have the bed properly secured to the body of the truck by a minimum of eight (8) one-half diameter bolts.  At least four (4) of these bolts must be in front of the slip-in-bed.

(p)     No wrecker shall lift more than the factory-rated lifting capacity permits.

**Sec. 138-128. Driver Responsibilities.**

(a)     Tow truck/wrecker drivers shall not have or permit any prohibited weapon or alcoholic beverages in or around a tow truck when operating the tow truck.  This provision does not prohibit a peace officer certified by the Texas Commission on Law Enforcement Officer Standards and Education from carrying a firearm while operating or riding in a tow truck/wrecker.

(b)     Tow truck/wrecker drivers must have a valid Texas driver's license for type of vehicle being driven, current identification and proof of a valid incident management towing Operator license.  Drivers shall wear a company uniform, be neatly groomed and be prompt and courteous in order to provide services.

(c)     Tow truck/wrecker drivers shall ensure that while he is lifting a vehicle in preparation for towing that no one but the Operator and/or helper shall be within a safe distance of the truck and vehicle to be towed.  A safe distance is at least twice the distance between the end of the boom and the point of hook-up on the vehicle being winched or twice the distance the car is being lifted, whichever is greater.  If a hydraulic lift is being used, a safe distance is twice the distance to which the lift arm is extended.

(d)     Tow truck/wrecker drivers shall ensure that if at any time during the process of connecting or winching, the tow truck or vehicle to be towed is in line of traffic, the flow of traffic must be diverted.  If the tow truck cable is across lane/lanes of traffic, the traffic must be stopped or diverted by a law enforcement officer to permit safe winching or lifting of the vehicle to be towed.

(e)     Tow truck/wrecker drivers shall make all efforts to sweep and clean, remove debris, and use absorbent material at the accident scene as necessary for public safety.

(f)     Tow truck/wrecker drivers shall conduct themselves in a professional manner at all times.

(g)     Tow truck/ wrecker drivers shall obey all lawful or direct orders from any and all police officers managing a scene or call where a wrecker is requested.

## Sec. 138-129. Storage Facility.

(a) City Limits. The storage facility must be located within the corporate limits of the City of New Braunfels and in compliance with the provisions of state law, including V.T.C.A., Occupations Code Ch. 2303, any rules or regulations with regard to the same adopted by the Texas Department of Licensing or Regulation and City ordinances. Operator cannot change the location of its storage facilities more than once during the Rotation Period as defined in §138-132 (a) Application Guidelines. If Operator desires to change the location of its storage facility, the Operator must obtain prior written approval from the Chief of Police of the new location and facility.

(b) Own or Lease. Operator can either own its storage facility or lease it under a written lease agreement for a term that at a minimum covers the entire Rotation Period as defined in §138-132(a). A copy of the title or deed in the case of ownership, or a copy of a lease agreement must be included with the application.

(c) Facility Requirements. The storage facility must be secure, completely enclosed by at least a 6 foot high fence, well lit, have an all weather surface parking lot. The storage lot shall be equipped with security cameras that record and the data shall be accessible to the Police Department for review. The storage site must be of sufficient capacity to handle at least 50 vehicles stored pursuant to this ordinance and exclusive of other vehicles stored not pursuant to this ordinance at any given time. There shall be enough room to store semi trucks and trailers if necessary.   At no time will cars be stored on a road or thoroughfare.  All police initiated non-consent towed vehicles will be towed to the storage facility or a secure location as determined by NBPD.

## Sec. 138-130. Insurance and Liability.

(a) The Operator shall maintain at his expense, insurance with limits not less than those prescribed below.  Operator further agrees to indemnify, defend, and hold City of New Braunfels harmless from any and all causes of action arising from performance of its responsibilities under this ordinance.

(b)With respect to required insurance shall:

   (1)  Name City of New Braunfels as additional insured/or an insured, as its interests may appear.
   (2)  Provide City of New Braunfels a waiver of subrogation.
   (3)  Provide City of New Braunfels with a thirty (30) day advance written notice of cancellation or material change to said insurance.

(4) Provide the New Braunfels Police Department with a Certificate of Insurance evidencing required coverage as part of the application for rotation list system.

(5) The Certificate of Insurance shall also specify that the policy covers the vehicle or vehicles subject to being used by Operator under this ordinance. The Certificate of Insurance shall identify the vehicle by make, model and vehicle identification number.

(c) Submit a certificate of insurance reflecting coverage according to TDLR Regulations.

Insurance underwriters must be acceptable to City of New Braunfels.

## Sec. 138-131. Indemnification.

(a) The Operator shall and does hereby agree to indemnify and hold harmless the City and its officials, officers, employees, agents and representatives from any and all loss, liability, obligation, penalties, judgments, claims, deficiency, expense or damages of any kind whatsoever by reason of any claim arising from a third person occasioned by any act, error or omission of Operator in the performance under this ordinance.

(b) The Operator will, at its sole cost and expense, defend and protect the City against any and all claims and demands set out in Section 138-131(a) above.

## Sec. 138-132. Application Guidelines.

(a) The rotation period shall occur annually, starting on May 1st of each year and shall run for a period of twelve months.

(b) The application period shall occur once annually. Applications from Operators will only be accepted from March 1st to March 15th of each year.

(c) Applications shall be submitted to the Chief of Police. The Chief of Police for the City of New Braunfels is authorized to establish an application fee for applying to be included on the City's rotation list so long as such fee does not exceed the amount of $15.00.

(d) Only licensed tow companies with a physical business address in the city limits and storage lots located in the city limits of New Braunfels may apply. Post office boxes or similar are not permitted. Operator can either own its storage facility or lease it under a written agreement for a term that at a minimum covers the entire Rotation Period as defined in §138-132(a) above. A copy of the property title in Operator's name or Operator's lease agreement must be included with the application.

(e) Applications will be reviewed by the Police Department, and all qualifying Operators will be placed on the rotation list system for one year, subject to their rotation assignment which will be determined by the Police Department.

(f) All Operators must apply each year during the application period to be on the rotation list and receive a rotation assignment. There are no automatic renewals.

(g) After the application period is closed, no additional wrecker services will be considered or added to the rotation list.

(h) A list of tow vehicles, including the make, model, vehicle identification number and TDLR identification number of each vehicle to be used in performing services under this ordinance must be provided on the application. The vehicles on this list must be owned or exclusively leased by the Operator and in the Operator's name and may not be a part of any other application by another Operator. Vehicle title or a vehicle lease agreement must be attached to the application as supporting documentation. Applications which contain duplicate tow vehicles will automatically be disqualified. All towing equipment listed on the application shall be made available for inspection by the Police Department.

(i) Operators must furnish the name, driver's license and TDLR license number and copies of such, of any/all drivers assigned to the wreckers as part of the application process. Applicant must list a minimum of four wrecker drivers who meet the requirements of this ordinance and applicable state law.

(j) Submittal of an application is an indication of ability on the part of the Operator to perform requested services, including sufficient personnel, vehicles and equipment in accordance with this ordinance.

(k) The selection and notification of Operators for the tow list shall be made by April 15th of each year.

(l) A City Officer or Employee may not have ownership interest in any participating wrecker service or participating storage facility.

(m) Applicant must provide a copy of legal title to the property in Applicant's name where the storage facility is located. If the site of the storage facility is leased, then Applicant must include a copy of a valid, executed copy of the lease agreement that must be in a form approved by the City. See Section 138-129 for additional requirements.

## Sec. 138-133. Towing Rotation List Procedures.

(a) All qualified Operators shall be placed on the rotation list. When it is known how many Operators are on the list, the rotation schedule will be set by the Police Department. The period of time an Operator is assigned on the schedule shall be referred to as the rotation assignment.

(b) Should an odd number of Operators be approved for the tow rotation, a lottery will be held to determine which Operator will get the extra rotation assignment on the rotation list. Operators will be given the opportunity to be present at this drawing.

(c) There will be two Operators scheduled for each rotation assignment and they will be called out by the Police Department on alternating calls. There will be no subcontracting allowed. Each Operator is responsible for having on duty equipment and personnel to handle their own calls, and to respond within the prescribed time limit. In cases where there is a large scene, the alternate Operator may be called by the Police Department to help.

(d) If conditions are such that both Operators are fully engaged and are unable to provide necessary services, the on duty police supervisor shall have the latitude to call another qualified Operator from the tow list to handle the excess workload.

(e) Operators may not sell or transfer their rotation assignment place on the rotation list to another Operator. Another Operator may not respond to calls for service at the request of an Operator on the list.

(f) An Operator may withdraw from the towing list with a one week notice to the Chief of Police. That Operator must wait until the next application period for consideration to be placed back on the list.

(g) In the case of voluntary or involuntary removal from the tow list, a lottery will be held of the remaining qualified Operators to fill each vacant rotation spot on the list.

**Sec. 138-134. Fees For Incident Management Tows.**

Operator agrees to follow the below listed fees for services rendered under this ordinance. The below listed fees are the only fees to be charged by Operators participating under this ordinance. No additional fees or surcharges can be added.

(a)     TOWING:

1. Light-Duty Wreckers: A wrecker equipped with a power operated winch, winch line, and a boom at least six (6) feet in length, with a rated or tested single line lifting capacity of not 10,000 pounds or less. Flatbed (also known as a rollback) load-up wreckers are included in this wrecker category.

   A. Standard towing with conventional or rollback $160.00 maximum.

   B. Standard towing for a wrecked vehicle, with conventional or rollback $190.00 maximum. (No additional winch fees allowed on standard tow.)

   C. Waiting fee <u>after</u> first thirty (30) minutes, $32.00 for each additional fifteen (15) minutes not to exceed $128.00 per hour.

   D. Rollover fee can be applied at a rate no greater than the waiting fee for time used.

   E. Drop Fee (In lieu of a standard towing fee.) maximum $75.00.

   F. Any tow that starts and ends within the city limits will have <u>NO</u> additional mileage fees.

   G. For consent tows, if customer requests vehicle to be towed outside city limits, a mileage rate will be a private contract between the Operator and the customer.

   H. Standard clean-up of debris will have no additional fees. Charges for cleanup of major incident scenes will require approval from on duty Police supervisor.

2. Medium-Duty Wreckers: A wrecker equipped with a power operated winch, winch line, and a boom at least six (6) feet in length, with a rated or tested single or double line lifting capacity of more than 10,000 to less than 25,000 pounds. Medium duty wrecker fees are only applicable if a medium duty wrecker is actually required.

    A. Standard towing $330.00 maximum.

    B. Standard towing for wrecked vehicle $380.00 maximum.

    C. Waiting fee <u>after</u> first thirty (30) minutes $62.00 for each additional fifteen (15) minutes not to exceed $248.00 per hour.

    D. Drop Fee (In lieu of a standard towing fee.) maximum $115.00.

    E. Standard clean-up of debris will have no additional fees. Charges for cleanup of major incident scenes will require approval from on duty Police supervisor.

3. Heavy-Duty Wreckers: A wrecker equipped with a power operated winch, winch line, and a boom at least six (6) feet in length, with a rated or tested single or double line lifting capacity of 25,000 pounds or more. Must be rated at 25 tons or more. Must be capable of towing a 12 yard tandem dump loaded trailer (50,000 lbs gvw). Additionally, it is preferred that this specialty equipment have airbags, and other equipment needed to right an overturned big truck or 18 wheeler.

    A. Standard towing fee $700.00 maximum.

    B. Standard towing fee for wrecked vehicle $800.00 maximum.

    C. Waiting fee <u>after</u> first thirty (30) minutes $110.00 for each additional fifteen (15) minutes not to exceed $440.00 per hour.

    D. Labor fee $585.00 per hour, per incident maximum. Additional recovery equipment and personnel labor left open for major scenes as needed. <u>Additional personnel or labor needed must be approved by the on scene Police supervisor.</u>

    E. Drop Fee (In lieu of a standard towing fee.) maximum $325.00.

(b)    <u>TOWING AND STORAGE OF CITY VEHICLES.</u>

If so requested by the City, the Operator shall tow up to fifteen (15) per month at no cost to the City of City owned, leased or vehicles otherwise under the City's control, including vehicles seized as evidence or for some other lawful police purpose. Vehicles qualifying for a free tow shall not exceed 1 ton hauling capacity. Vehicles will be towed to Operator's storage facility or as directed by the Police Department. Operator shall store City controlled vehicles at no cost. However, City agrees that any of the vehicles stored at Operator's vehicle storage facility shall not remain stored in excess of fifteen (15) days without arrangement of fees to be charged to the City. The City of New Braunfels shall pay

Operator the same rates as stated above for City controlled vehicles towed in excess of 15 per month. City controlled vehicles towed from outside of the City boundaries will be charged at no more than the public rates. If this tow is within the 15 fee tows no charge will occur once inside the City limits. Operator shall provide to the Police Department a monthly summary statement, along with the individual tow tickets for all City controlled vehicles to include the 15 free tows.

**Sec. 138-135. Hearing; Suspension and Termination by Chief of Police.**

(a) Hearing. Before the Chief of Police suspends or terminates an Operator from the rotation list system, the Operator must be afforded an opportunity to present his/her reasons why the Chief should not take any suspension or termination action, or to present factors that the Chief can consider in assessing the length of the suspension or termination.

(b) Suspension by Chief of Police.
The Chief of Police shall suspend an Operator from the rotation list system for any violation of this ordinance or any policy adopted by the Chief of Police under authority of this ordinance or state law. The period of suspension is to be determined by the Chief of Police, whose decision is final and is not appealable to the City Manager or City Council. The Chief shall notify a rotation Operator of suspension from the rotation list system in writing either by confirmed fax, certified mail return receipt requested, or hand delivered notice. The notice must state the basis for the action.

(c) Termination by the Chief of Police.
The Chief shall terminate the Operator from participating in the rotation list system based upon:
1. Any repeated violations of the provisions of this article;
2. Any criminal offense committed by the service or by the driver, employee or agent of the service, in the course of providing services under this ordinance, whether or not the services are being performed as part of the rotation list system call; or
3. Any conduct which endangers the life or safety of any person.

A tow Operator that has been terminated will not be placed on the rotation list for up to 5 years. The decision of the Chief of Police to terminate an Operator is final and is not appealable to the City Manager or City Council. The Chief shall notify a rotation Operator of termination from the rotation list system in writing either by confirmed fax, certified mail return receipt requested, or hand delivered notice. The notice must state the basis for the action.

**Sec. 138-136 Penalties.**

An Operator who violates any provision of this ordinance commits a misdemeanor and upon conviction shall be punished by a fine of not less than $200 nor more than $500, unless a different fine is otherwise specifically provided for a violation under this ordinance.

SECTION 3: THIS ORDINANCE DOES NOT CREATE ANY CONTRACTUAL RIGHTS FOR OPERATORS OR ANY THIRD PARTIES.

SECTION 4: This Ordinance shall be and is hereby declared to be cumulative to all other ordinances of the City of New Braunfels relating to vehicle storage facilities and nonconsent towing of

vehicles within the city limits, and same shall not operate to repeal or affect any such ordinance or ordinances except insofar as the provisions of such ordinance or ordinances are inconsistent or in conflict with the provisions of this Ordinance, in which instance or instances those provisions shall be and they are hereby repealed.

SECTION 5: That if any provisions of this Ordinance shall be held void, illegal, or unconstitutional, it is hereby provided that all other parts of the same which are not held void, illegal or unconstitutional shall remain in full force and effect.

SECTION 6: This Ordinance shall take effect upon the second and final reading of the same.

PASSED AND APPROVED: First reading this 12ᵗʰ day of January, 2015.

PASSED AND APPROVED: Second reading this 26ᵗʰ day of January, 2015.

CITY OF NEW BRAUNFELS, TEXAS

_____
Barron Casteel, Mayor

ATTEST:

_____
Patrick Aten, City Secretary

APPROVED AS TO FORM:

_____
Valeria M. Acevedo, City Attorney