Thomas J. "Jim" TRULOCK, Appellant

v.

The CITY OF DUNCANVILLE, Appellee.

No. 05–08–00343–CV.

Court of Appeals of Texas, Dallas.

Feb. 19, 2009.

Edward B. Klein, Attorney At Law, Gary P. Cantrell, Attorney At Law, Carrollton, TX, for Appellant.

Robert E. Hager, Nichols Jackson Dillard, Hager & Smith, LLP, Kimberly Rogalin Lafferty, Dallas, TX, for Appellee.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

Thomas J. "Jim" Trulock appeals the county court's interlocutory "Order Denying [Trulock's] Application for Temporary Injunction and for Declaratory Judgment," which dismissed his claims for "want of jurisdiction." In two issues, Trulock argues: (1) the county court erred when it determined it did not have jurisdiction to

hear the matter or grant him injunctive relief; and (2) the City of Duncanville's Ordinance No.2039 violates liberties and protections guaranteed by the Texas and United States Constitutions.

In its response, Duncanville argued, *inter alia*, this Court lacks subject matter jurisdiction over this appeal under the doctrine of mootness because a justiciable controversy no longer exists. Duncanville claimed Ordinance No.2039 was repealed, amended, and modified, in part, by the enactment of Ordinance No.2051. This Court requested supplemental briefing from both parties on the issue of whether this case has become moot during the pendency of this interlocutory appeal.

After reviewing the supplemental briefing, we conclude this case has become moot during the pendency of this interlocutory appeal. Trulock's interlocutory appeal is dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Trulock issues "invitations to engage in sexual activity and guests at his house [located in Duncanville, Texas,] are often advocates of a 'swinging' lifestyle." Trulock's house is known as "The Cherry Pit."

On November 6, 2007, Duncanville adopted Ordinance No.2039 for the regulation of sex clubs. *See* Duncanville, Tex., Code of Ordinances ch. 11B, *Sex Club Regulations* (Ordinance No.2039, adopted Nov. 6, 2007), *modified, amended, and repealed in part by* Ordinance No.2051 (adopted May 6, 2008). Trulock was cited for the operation of a sex club in violation of Ordinance No.2039 on November 11, 2007 (citation no. C000417), December 8, 2007 (citation no. C000422), December 22,

2007 (citation no. C000430), December 31, 2007 (citation no. C000431), and one other occasion (citation no. C000577).[1]

On December 12, 2007, Trulock filed suit against Duncanville in county court seeking: (1) a declaratory judgment that Ordinance No.2039 is invalid and unenforceable because it violates his constitutional rights; and (2) an injunction restraining Duncanville from enforcing Ordinance No.2039. On January 7, 2008, Duncanville filed special exceptions, an original answer, and counterclaims under the Sexually Oriented Business Ordinance for civil penalties, nuisance, injunctive relief, and a declaratory judgment. *See* Duncanville, Tex., Code of Ordinances ch. 11A, *Sexually Oriented Businesses, Dance Halls & Massage Establishments*. On January 9, 2008, Trulock filed his first amended petition.

On January 25, 2008, the county court held a hearing on Trulock's application for temporary injunction set forth in his first amended petition. During the hearing, Duncanville's special exceptions were argued. At the conclusion of the hearing, before ruling on Trulock's application for temporary injunction or Duncanville's special exceptions, the county court granted Trulock's request for leave to amend his petition. On February 1, 2008, Trulock filed his second amended petition. On February 3, 2008, Duncanville filed a second set of special exceptions.

On February 21, 2008, the county court signed its "Order Denying [Trulock's] Application for Temporary Injunction and for Declaratory Judgment," which concluded the county court lacked jurisdiction to consider Trulock's claims, denied Trulock's application for a temporary injunction, and

---

**1.** Trulock attached copies of four citations to his second amended petition. However, he did not attach a copy of citation no. C000577. Duncanville advises that this citation was made under Ordinance No.2039 and has provided a certified copy of the municipal court's judgment convicting Trulock of the offense.

dismissed Trulock's claims for want of jurisdiction. Duncanville's counterclaims under the Sexually Oriented Business Ordinance remain pending in the county court. On March 10, 2008, Trulock filed his notice of interlocutory appeal of the county court's order dismissing his claims for want of jurisdiction.

On May 6, 2008, Duncanville repealed, amended, and modified, in part, Ordinance No.2039 when it enacted Ordinance No.2051. *See* Duncanville, Tex., Code of Ordinances ch. 11B, *Sex Club Regulations* (May 6, 2008).

On October 9, 2008, Trulock filed a motion to enforce the automatic stay in this Court pursuant to section 51.014(b) of the Texas Civil Practice and Remedies Code, which Duncanville disputed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(b) (Vernon 2008). On October 22, 2008, this Court stayed all further proceedings in County Court at Law No. 2, cause no. CC–07–16110–B, until disposition of this appeal pursuant to Texas Rule of Appellate Procedure 29.2. *See* Tex.R.App. P. 29.3.[2]

On October 28, 2008, in municipal court, a jury found Trulock guilty of five counts of the offense of operation of a sex club in cause nos. C000417–1, C000422–1, C000430–1, C000431–1, and C000577–1.[3] The municipal court's judgments show Trulock's punishment was assessed at a fine in the amount of $1,063 for each of the five citations.[4]

## II. MOOTNESS DURING THE PENDENCY OF APPEAL

In its supplemental brief on the issue of mootness, Duncanville asserted there is no live controversy between the parties and Trulock has not established an exception to the doctrine of mootness. In his supplemental brief on the issue of mootness, Trulock contends: (1) there are live controversies between the parties relating to Ordinance No.2039; and (2) an exception to the mootness doctrine applies because the issue is "capable of repetition, yet evading review."

### A. Standard of Review

■ Whether a court has subject matter jurisdiction is a legal question that is reviewed de novo. *See City of Shoreacres v. Tex. Comm'n of Envtl. Quality,* 166 S.W.3d 825, 830 (Tex.App.-Austin 2005, no pet.). The mootness doctrine implicates subject matter jurisdiction. *See id.; Pantera Energy Co. v. R.R. Comm'n of Tex.,* 150 S.W.3d 466, 471 (Tex.App.-Austin 2004, no pet.).

### B. Applicable Law

■ An appellate court is prohibited from deciding a moot controversy. *See Nat'l Collegiate Athletic Ass'n v. Jones,* 1 S.W.3d 83, 86 (Tex.1999). This prohibition is rooted in the separation of powers

---

**2.** The record does not show Trulock requested the municipal court to stay the criminal proceedings pending the outcome of this interlocutory appeal or that Trulock requested this Court in this interlocutory appeal or another proceeding to stay the criminal proceedings against him.

**3.** We note that in Duncanville's appendix to its supplemental brief on the issue of mootness, Duncanville attached a copy of the motion to quash that Trulock filed in municipal court, which raised constitutional issues relat-

ing to the ordinance, and the municipal court's order denying Trulock's motion to quash.

**4.** Duncanville filed certified copies of the municipal court's judgments in an appendix to its supplemental brief on the issue of mootness. *See Seals v. City of Dallas,* 249 S.W.3d 750, 754 (Tex.App.-Dallas 2008, no pet.) (appellate court may entertain affidavits to ascertain facts necessary for proper exercise of its jurisdiction).

doctrine in the Texas and United States Constitutions that prohibits courts from rendering advisory opinions. *See Nat'l Collegiate,* 1 S.W.3d at 86.

■ For a plaintiff to have standing, a controversy must exist between the parties at every stage of the legal proceedings, including the appeal. *See Puntera,* 150 S.W.3d at 471. If a case becomes moot, the parties lose their standing to maintain their claims. *Id.*

■ Generally, an appeal is moot when the court's action on the merits cannot affect the rights of the parties. *VE Corp. v. Ernst & Young,* 860 S.W.2d 83, 84 (Tex. 1993). A case on appeal is moot if: (1) there are no live controversies between the parties; and (2) any decision rendered by the appellate court would be an advisory opinion. *See Seals v. City of Dallas,* 249 S.W.3d 750, 754 (Tex.App.-Dallas 2008, no pet.) (citing *Camarena v. Tex. Employment Comm'n,* 754 S.W.2d 149, 151 (Tex. 1988)); *cf. id.* (issue on appeal is moot if either: (1) a party seeks judgment on controversy that does not really exist; or (2) a party seeks judgment which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy). A party cannot moot a case on appeal by simply altering the complained-of law in some insignificant way. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,* 508 U.S. 656, 662 n. 3, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993); *Long Term Care Pharmacy Alliance v. Tex. Health & Human Servs. Comm'n,* 249 S.W.3d 471, 478–79 (Tex.App.-Eastland 2007, no pet.) (minor substantive amendments to law that neither repealed earlier version of law nor substantively changed complained-of portion of earlier version of law did not moot case). Also, a dispute over attorneys' fees is a live controversy. *Allstate Ins. v. Hallman,* 159 S.W.3d 640, 642 (Tex.2005).

■ There are two exceptions that confer jurisdiction regardless of mootness: (1) the issue is "capable of repetition, yet evading review"; and (2) the collateral consequences doctrine. *Gen. Land Office of State of Tex. v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex.1990); *accord Weinstein v. Bradford,* 423 U.S. 147, 148, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam) (capable of repetition, yet evading review); *see also Tex. Educ. Agency v. Dallas Indep. Sch. Dist.,* 797 S.W.2d 367, 369 (Tex.App.-Austin 1990, no writ).

■ The "capable of repetition, yet evading review" exception has only been used to challenge unconstitutional acts performed by the government. *See Gen. Land,* 789 S.W.2d at 571. This exception applies only in rare circumstances. *See Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *Williams v. Lara,* 52 S.W.3d 171, 184 (Tex.2001). It is limited to situations where the following circumstances are simultaneously present: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, or the party cannot obtain review before the issue becomes moot; and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *See Weinstein,* 423 U.S. at 148, 96 S.Ct. 347; *Spencer,* 523 U.S. at 17, 118 S.Ct. 978; *Williams,* 52 S.W.3d at 184; *Gen. Land,* 789 S.W.2d at 571.

■ There must be a "reasonable expectation" or a "demonstrated probability" that the same controversy will recur involving the same complaining party. *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam); *Weinstein,* 423 U.S. at 148, 96 S.Ct. 347. The mere physical or theoretical possibility that the same party may be subjected to the same action again is not sufficient to

satisfy the test. *See Murphy*, 455 U.S. at 482, 102 S.Ct. 1181; *cf. City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288–89, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (without discussing "capable of repetition, yet evading review" exception or need for "reasonable expectation" or "demonstrated probability," determined issue not moot because city's repeal of objectionable language would not preclude it from re-enacting precisely same provision district court's judgment vacated).

## C. Application of the Law to the Facts

### 1. No Live Controversy Remains

Duncanville argues the case has become moot during the pendency of this interlocutory appeal because: (1) Trulock's challenge to the constitutionality of section 11B–7 of Ordinance No.2039, relating to abatement for public nuisance, was rendered moot by its repeal in Ordinance No.2051; and (2) although Ordinance No.2051 contains a savings clause, Trulock was convicted by a jury on October 27, 2008, for the citations issued under Ordinance No.2039 and no further charges or actions are pending. Trulock argues there is still a live controversy between the parties because: (1) Ordinance No.2039 is embedded within Ordinance No.2051; (2) the savings clause in Ordinance No.2051 is broad, so he may still be prosecuted for violations that occurred during the time when Ordinance No.2039 was in effect; and (3) there is a live claim for attorneys' fees.

■ First, Trulock argues Ordinance No.2039 is so embedded within Ordinance No.2051 that it is impossible to remove the unconstitutional portions of Ordinance No.2039.[5] Trulock has not provided us with any specific examples or argument beyond that broad assertion. Ordinance No.2051 repealed, amended, and modified, in part, Ordinance No.2039 in several respects, including several definitions pertinent to the actions that are prohibited: (1) it repealed the definitions of "Consideration,"[6] "Operate and maintain,"[7] and

---

5. Also, Trulock argues "Section 9 of Ordinance [No.] 2051 is nearly identical." Section 9 of Ordinance No.2051 states:

It is hereby declared to be the intention of the City Council that the sections, paragraphs, sentences, clauses, and phrases of this Ordinance are severable, and if any section, paragraph, sentence, clause, or phrase of this Ordinance shall be declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining sections, paragraphs, sentences, clauses, and phrases of this Ordinance, since the same would have been enacted by the City Council without the incorporation in this Ordinance of any such unconstitutional section, paragraph, sentence, clause or phrase.

Trulock does not identify which section in Ordinance No.2039 is "nearly identical" to section 9 of Ordinance No.2051. However, we note that section 4 of Ordinance No.2039 is similar to section 9 of Ordinance No.2051. Section 4 states:

That should any section, paragraph, sentence, subdivision, clause, phrase or provision of this ordinance be adjudged or held to be unconstitutional, illegal or invalid, the same shall not affect the validity of this ordinance as a whole or any part or provision hereof other than the part so decided to be unconstitutional, illegal, or invalid and shall not affect the validity of the remainder of this ordinance or any other provision of the Code of Ordinances of the City of Duncanville.

Trulock does not address how these similar sections demonstrate a live controversy remains between the parties.

6. Ordinance No.2039 defined "Consideration" as follows:

*Consideration.* The required, voluntary or suggested payment of money or of any item of value, for:

(1) The right to enter or remain in the premises, or any portion thereof,

(2) The right to obtain any item permitting the right to enter or remain on the premises, or any portion thereof, or

"Sex Club"[8] and replaced them with new definitions; (2) it added a definition of "Donation"[9]; (3) it repealed the section entitled "Operation and maintenance of a sex club declared a public nuisance and prohibited" and replaced it with a new section[10]; (4) it repealed the section entitled "Abatement of public nuisance" and replaced it with a new section;[11] and (5)

(3) The right to membership permitting the right to enter or remain on the premises, or any portion thereof.

Ordinance No.2051 repealed that definition of "Consideration" and replaced it with the following definition:

Consideration. Any exchange of money, an item of value, or service requested, solicited, provided, or bargained for in connection with:

(1) gaining entrance or the right to remain on a premises, or any portion thereof;

(2) obtaining an item or any marking permitting entrance or the right to remain on the premises, or any portion thereof; or

(3) a membership or other form of affiliation permitting the right to enter or remain on the premises, or any portion thereof.

7. Ordinance No.2039 defined "Operate and maintain" as follows:

Operate and maintain. To organize, design, perpetuate, control, manage, publicize, invite or solicit. To operate and maintain a sex club includes arrangement for or payment of the costs of utilities, rent, maintenance, entertainment, food beverages, advertising, publicity or other services; or the supervision or performance of activities, work assignments; or directing or in any way furthering the aims or purposes of the club or organization.

Ordinance No.2051 repealed that definition of "Operate and maintain" and replaced it with the following definition:

Operate and maintain. To organize, manage, control, design, perpetuate, publicize, invite or solicit. Operate and maintain includes providing financial support by paying utilities, rent, maintenance costs, or advertising costs; providing food, beverages, or other entertainment; supervising activities or work schedules, and directing or furthering the aims of the enterprise or organization.

8. Ordinance No.2039 defined "Sex Club" as follows:

Sex club. Any premises, person or organization that is presented, advertised, held out or styled as, or which provides notification to the public that it is a swinger's club; an adult encounter group or center; a sexual encounter group or center; party house or home; wife, spouse or partner-swapping club; or that it provides permission, an opportunity or an invitation to engage in or to view sexual activity, stimulation or gratification, whether for consideration or not.

Ordinance No.2051 repealed that definition of "Sex Club" and replaced it with the following definition:

Sex Club. Any organization or real property and its improvements advertised, promoted, or presented as a location where for a solicited fee, donation, or other consideration, there is an opportunity or invitation to engage in or to observe sexual activity.

9. Ordinance No.2051 added the following definition for "Donation":

Donation. Any act or instance of presenting money, an item of value, or a service as a grant or contribution in association with the availability of some benefit, including but not limited to a good or service, admission or access to a location or event, or use of facilities.

10. The section entitled "Operation and maintenance of a sex club declared a public nuisance and prohibited" in Ordinance No.2039 stated:

The operation and maintenance of a sex club is unlawful and a public nuisance per se which shall be abated by order of the building official.

Ordinance No.2051 repealed that section and replaced it with the following:

The operation and maintenance of a sex club is unlawful and a nuisance per se.

11. The section entitled "Abatement of public nuisance" in Ordinance No.2039 stated:

(a) Upon order of the building official, any person operating and maintaining a sex club shall immediately cease such operation and maintenance, and shall, if so ordered by the building official, vacate the premises. Such order shall be in writing, and may be served in person, by certified or regular

it added a section relating to appeals of orders to cease the operation and maintenance of a sex club.[12] We conclude Ordinance No.2051 significantly altered Ordinance No.2039. *See Ne. Fla. Chapter of Associated Contractors,* 508 U.S. at 662 n. 3, 113 S.Ct. 2297 (ordinance must be significantly altered or case not moot on appeal); *Long Term Care,* 249 S.W.3d at 478–79 (cannot moot case by altering law in insignificant way). Further, these changes repealed, amended, and modified the portions of Ordinance No.2039 that Trulock complained were unconstitutional.

■ Second, Trulock argues the savings clause in Ordinance No.2051 is broad, so he may still be prosecuted for violations that occurred during the time when Ordinance No.2039 was in effect. Ordinance No.2051 contains the following savings clause:

> All rights and remedies of the City of Duncanville are expressly saved as to any and all violations of the provisions of any ordinances governing Sex Clubs that have accrued at the time of the effective date of this Ordinance; and, as to such accrued violations and all pending litigation, both civil and criminal, whether pending in court or not, under such ordinances, same shall not be affected by this Ordinance but may be prosecuted until final disposition by the courts.

The record shows there were only five citations for violations of Ordinance No.2039 issued to Trulock that accrued by the effective date of Ordinance No.2051, i.e., May 6, 2008. Duncanville has provided us with certified copies of the municipal court's judgments convicting Trulock as to these five citations. Duncanville advises there are no further charges or actions pending against Trulock under Ordinance No.2039. Trulock does not argue there are any pending citations against him for violations of Ordinance No.2039. The savings clause in Ordinance No.2051 preserves only violations "that have accrued" as of the date of the adoption of Ordinance No.2051.

---

mail, or by posting of the order on the premises.

(b) Nothing in this article shall be construed to apply to the presentation, showing or performance of any play, drama or ballet in any theater, concert hall, fine arts academy, school, institution of higher education or similar establishment holding a certificate of occupancy from the city, as a form of expression of opinion or communication of ideas or information.

Ordinance No.2051 repealed subsection (a) and replaced it with the following:

The Building Official may order any person operating and maintaining a sex club to immediately cease such operation and maintenance, and require patrons to vacate the premises. The Order abating the nuisance shall be in writing, and may be served in person, by certified or regular mail, or by posting the order on the premises.

12. Ordinance No.2051 added the following section entitled "Appeal":

On receipt of a written Order to cease operation and maintenance of a sex club, the owner, tenant, or person in charge of or having beneficial use of the premises shall have the right to appeal to the board of adjustment of the City. The Board of Adjustment on the filing of such an appeal shall conduct a hearing and take evidence as to whether a sex club is being operated in violation of this article. The chair of the Board of Adjustment may administer oaths and compel the attendance of witnesses. Minutes and records of the examinations and evidence presented during the hearing must be kept and filed as public record. The decision of the Board of Adjustment is final, and any appeal of the decision must be made to the district court within 30 days after receipt of the written notice of the decision of the Board of Adjustment. The district court's review shall be limited to a hearing under the substantial evidence rule. Costs may not be allowed against the City or the Board of Adjustments.

Also, Duncanville states it did not take action against Trulock under Ordinance No.2039 to abate the public nuisance and, pursuant to the savings clause in Ordinance No.2051, all future abatement orders would be subject to the provisions of Ordinance No.2051, not Ordinance No.2039. We are not advised how the savings clause has that effect. However, in his second amended petition and brief on appeal, Trulock admitted that the building official has neither ordered nor served Trulock with an order of abatement for public nuisance, requiring him to vacate the premises. In his second amended petition, Trulock stated he *"may be forced* to vacate the premises of his home." In his brief on appeal, he stated "Duncanville has chosen to thus far enforce only a portion of [ ] Ordinance [No.2039]," *"the threat* of additional enforcement, and ejection from his home is real," and "Ordinance [No. 2039] grants The [sic] Building Official of the City of Duncanville apparent unbridled authority to order any occupant in violation of [ ] Ordinance [No.2039] to vacate the premises upon which the alleged activity is purported to have occurred.... *[I]f that ordinance is executed,* [Trulock] will be deprived of a recognized liberty and property right without due process of law." (Emphasis added). Trulock has not argued nor does the record show that the building official ordered Trulock to abate for public nuisance or Trulock was served with an order of abatement for public nuisance under Ordinance No.2039 before the effective date of Ordinance No.2051. Trulock has shown no basis for any action against him by Duncanville under the prior Ordinance No.2039.

We conclude because we have not been shown there are orders of abatement for public nuisance or citations pending against Trulock for violations of Ordinance No.2039 that accrued before the effective date of Ordinance No.2051, Trulock has not demonstrated any live controversy.

■ Third, Trulock argues there is a live claim for attorneys' fees. However, the county court granted Duncanville's second set of special exceptions and dismissed Trulock's claims. We conclude there is no live claim for attorneys' fees.

Premised on the foregoing, we conclude this case has become moot during the pendency of this appeal because there are no live controversies between the parties and any decision rendered by this Court would be an advisory opinion. As a result, we must consider the parties' arguments regarding whether an exception to the doctrine of mootness applies.

## 2. An Exception to Doctrine of Mootness Does Not Apply

Trulock argues this court has jurisdiction regardless of mootness because the issue is "capable of repetition, yet evading review." He claims the ease with which Duncanville modified Ordinance No.2039, enacted the savings clause in Ordinance No.2051, and enforced the citations for violations of Ordinance No.2039, despite having amended it, demonstrate the issue is "capable of repetition, yet evading review." Duncanville responds that Trulock has not established any exception to the doctrine of mootness.

■ To establish the "capable of repetition, yet evading review" exception, Trulock must show: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, or the party cannot obtain review before the issue becomes moot; and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *See Weinstein,* 423 U.S. at 148, 96 S.Ct. 347; *Spencer,* 523 U.S. at 17, 118 S.Ct. 978; *Williams,*

52 S.W.3d at 184; *Gen. Land,* 789 S.W.2d at 571. However, Trulock does not explain how there is a "reasonable expectation" that he will be subjected to the same enforcement actions under Ordinance No.2039 again. As we stated above, Ordinance No.2039 has been repealed, amended, and modified, in part, and there are no pending violations of Ordinance No.2039 preserved by the savings clause in Ordinance No.2051. Accordingly, we conclude there is no "reasonable expectation" that Trulock will suffer the same alleged wrong. Based on this conclusion, we need not consider whether the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, or Trulock could obtain review before the issue became moot.

We conclude an exception to the doctrine of mootness does not apply because the issue is not "capable of repetition, yet evading review." If Trulock is cited or served an order of abatement for public nuisance under Ordinance No.2051, there will be ample time for him to obtain judicial review of that ordinance. *See Lewis v. Continental Bank Corp.,* 494 U.S. 472, 482, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990).

## III. CONCLUSION

The case has become moot during the pendency of this interlocutory appeal.

This Court's October 22, 2008 order staying all further proceedings in County Court at Law No. 2, cause no. CC–07–16110–B, is vacated.

Trulock's interlocutory appeal is dismissed.