Mark WALTERS, Appellant

v.

Brad LIVINGSTON, Individually and in His Official Capacity as Executive Director, Texas Department of Criminal Justice, Appellees

No. 07-15-00146-CV

Court of Appeals of Texas, Amarillo.

February 15, 2017

Rehearing Overruled May 12, 2017

Mark Walters, pro se.

Celamaine Cunniff, Austin, Craig Jacobs, for Appellee.

1. TEX. CIV. PRAC. & REM. CODE ANN. §§ 110.001-

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

## OPINION

Patrick A. Pirtle, Justice

This is an appeal from an order granting summary judgment. In the underlying lawsuit, Appellant, Mark Walters, a former inmate proceeding *pro se*, sued Appellee, Brad Livingston, individually and in his official capacity as executive director of the Texas Department of Criminal Justice (hereinafter "TDCJ"), alleging that Livingston and TDCJ substantially burdened the free exercise of his Native American religion by denying him the right to personally smoke a "sacred ceremonial pipe" during religious ceremonies. Walters alleged that the acts of Livingston and TDCJ were in violation of (1) the First and Fourteenth Amendments to the United States Constitution, (2) Article I, Sections 3, 6, 8 and 19 of the Texas Constitution, (3) a *Compromise and Settlement Agreement* reached in previous litigation between TDCJ and another Native American inmate, and (4) the Texas Religious Freedom Restoration Act (TRFRA).[1] Based on those theories, Walters sought declaratory relief, injunctive relief, damages (including attorney's fees) and costs of court. The trial court granted a motion for summary judgment filed by Livingston and TDCJ and dismissed Walters's lawsuit with prejudice. We affirm, in part, and reverse and remand, in part.

PROCEDURAL BACKGROUND

Walters is a Native American who was previously incarcerated in the Correctional Institutions Division of the TDCJ. He was released from custody on June 13, 2014. On July 11, 2013, during his period of incarceration, Walters filed the underlying cause of action alleging TDCJ violated his

.012 (West 2011)

religious right to personally smoke a "sacred ceremonial pipe" during Native American religious ceremonies. In addition to seeking personal relief, Walters requested the trial court to certify forty-two other similarly-situated Native American inmates or former inmates as a class for purposes of a class action proceeding pursuant to sections 26.001-.051 of the Texas Civil Practice and Remedies Code (West 2015) and Rule 42 of the Texas Rules of Civil Procedure.[2]

By its pleadings, TDCJ admitted that it previously had a policy allowing Native American inmates to *personally* smoke a ceremonial pipe as a part of their religious practices. TDCJ contends that policy was changed, however, based on medical and security considerations. As admitted by TDCJ, its official policy is reflected by "Policy Number 09.01 (rev. 5)," adopted July 2012 (no specific date specified). The policy is contained in the official manual of the Chaplaincy Department of TDCJ which provides, in part, as follows:

IV. The pipe service shall be conducted by a qualified Native American chaplain or volunteer.

. . .

B. . . . only the Native American chaplain/volunteer or qualified person authorized by the Native American chaplain/volunteer shall touch, carry, or handle the herbal mixture or other sacred paraphernalia brought in for the pipe service.

C. Only the Native American chaplain/volunteer is authorized to smoke the pipe used for the pipe service.

On July 13, 2014, TDCJ filed a *Motion to Transfer Venue*, pursuant to section 15.019(a) of the Texas Civil Practice and Remedies Code, alleging venue was proper in Coryell County, because Walters's cause of action accrued while he was incarcerated in a TDCJ facility located in that county. On July 15, 2014, without obtaining a ruling on its venue motion, TDCJ filed a *Plea to the Jurisdiction* contending Walters's release from prison on June 13, 2014, denied him standing to prosecute his claims. Following a hearing before the Honorable Joseph Hart, the plea to the jurisdiction was denied on July 31, 2014.

On September 15, 2014, Walters filed his *Second Amended Petition* adding Livingston in his individual capacity and adding a breach of contract claim based upon a *Compromise and Settlement Agreement* reached between TDCJ and another Native American inmate, Jolene Yellowquill. In litigation instituted by Yellowquill against TDCJ, she alleged violations of her free exercise of religion similar to the violations being alleged by Walters. The Yellowquill litigation was settled in October of 1998 by the entry of a *Compromise and Settlement Agreement*.[3] By his amended petition, Walters sought recovery of de-

---

**2.** Although his petition purports to be filed on behalf of forty-two other Native Americans identified as a "putative class of inmates and former inmates," Walters does not represent those individuals because (1) he is not an attorney, *see Pham v. Harris County Rentals, L.L.C.*, 455 S.W.3d 702, 710 (Tex. App.—Houston [1st Dist.] 2014, no pet.), and (2) other than the dismissal the subject of this proceeding, the trial court has not ruled on his prayer seeking a class certification of that group pursuant to sections 26.001-.051 of the

Texas Civil Practice and Remedies Code and Rule 42 of the Texas Rules of Civil Procedure.

**3.** *See Yellowquill v. Scott, et al.,* Civil Action No. H-95-1080, United States District Court for the Southern District of Texas, Houston Division (unpublished). A copy of the *Compromise and Settlement Agreement* was attached as "Exhibit I" to TDCJ's summary judgment motion.

claratory relief, injunctive relief, damages, and costs of court.

Livingston and TDCJ subsequently filed a traditional motion for summary judgment pursuant to Rule 166a(c) of the Texas Rules of Civil Procedure. By their motion, Livingston and TDCJ raised the following five "issues of law" purportedly entitling them to summary judgment, as a matter of law: (1) whether Walters had standing to maintain his lawsuit, (2) whether there were viable claims against Livingston in his individual capacity, (3) whether Walters's claims were barred by statute of limitations, (4) whether TDCJ's ban on communal pipe smoking violated the free exercise of religion, and (5) whether his "breach of contract" claim had merit. Walters filed his response to that motion, and on February 6, 2015, the Honorable Rhonda Hurley issued an order granting summary judgment in favor of Livingston and TDCJ and dismissing Walters's lawsuit with prejudice.[4]

The trial court based its ruling on two specific findings: (1) that Walters lacked standing to pursue his claims and (2) those claims were barred by the applicable statute of limitations. Walters timely filed his *Notice of Appeal.*[5] By three issues, Walters contends the trial court erred by (1) determining that his claims were moot due to his release from incarceration, (2) determining that his damage claims under TRFRA were barred by the statute of limitations, and (3) granting summary judgment.[6]

### STANDARD OF REVIEW

We review the granting of a motion for summary judgment *de novo. Henkel v. Norman,* 441 S.W.3d 249, 250 (Tex. 2014) (per curiam). In reviewing a summary judgment, this court must apply the standards established in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985), which are: (1) the movant for summary judgment has the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. For a party to prevail on a traditional motion for summary judgment the "movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law." *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex. 2005) (citing *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991)). A movant must either prove every essential element of its claim or affirmative defense, *Amedisys, Inc. v. Kingwood Home Health Care, LLC,* 437 S.W.3d 507, 511 (Tex. 2014); or negate at least one essential element of the non-movant's cause of action. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion and present to the trial court

4. In light of the ultimate disposition of this proceeding, we pass no judgment on the propriety of dismissing this lawsuit *with prejudice.*

5. Originally appealed to the Third Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3

6. An analysis of issues one and two encompasses a discussion of issue three.

any issues that would preclude entry of a summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979). In deciding which party should prevail in this situation, "[w]e examine the record in the light most favorable to the nonmovant, indulge every reasonable inference against the motion and likewise resolve any doubts against it." *See Henkel*, 441 S.W.3d at 250. *See also Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

 Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion and not by mere reference to summary judgment evidence. *McConnell v. Southside School Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. TEX. R. CIV. P. 166a(c). Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *Casso v. Brand*, 776 S.W.2d 551, 553 (Tex. 1989).

 When an order granting summary judgment does not specify or state the ground or grounds upon which it is based, the summary judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 439 n.11 (Tex. 2016) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Serafine v. Blunt*, 466 S.W.3d 352, 383 n.100 (Tex. App.—Austin 2015, no pet.). However, "[w]hen a trial court grants summary judgment on specific grounds, we have limited our consideration on appeal to the grounds upon which the trial court granted summary judgment...." *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) (citing *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993)) (plurality opinion) (stating that when the "trial court's order explicitly specifies the ground relied on for the summary judgment ruling ... the summary judgment can only be affirmed if the theory relied on by the trial court is meritorious"); *Delaney v. University of Houston*, 835 S.W.2d 56, 58 (Tex, 1992) (stating "the district court did not base summary judgment on these arguments, and we are ... not inclined to consider them in reviewing the correctness of its ruling"). One reason for confining our consideration to the theories relied upon by the trial court is because affirming a summary judgment on a ground not relied upon would be usurping that court's authority to consider and rule on the issues before it. *Cincinnati Life Ins. Co.*, 927 S.W.2d at 626. Furthermore, doing so would deprive this court of the benefit of the trial court's reasoning on the issue. *Id.*

Here, the trial court specifically found "Walters has been released from the Texas Department of Criminal Justice, rendering this lawsuit moot because [he] does not have standing to pursue his claims against [TDCJ]." The trial court further found that Walters's claims were barred by the "applicable statute of limitations." Based on the above-referenced authority, we will limit our consideration to the two theories relied on by the trial court.

ISSUE ONE—MOOTNESS AND STANDING

 By his first issue, Walters contends the trial court erred by determining that his claims were "mooted for lack of standing." By its *Amended Motion for Summary Judgment*, based on the fact that Walters had been released from incarceration, Livingston and TDCJ contended that,

as a matter of law, he lacked standing to maintain his claim for declaratory or injunctive relief because he was no longer subject to "the alleged unconstitutional policy about which he complains." While Livingston and TDCJ acknowledged Walters's release from prison did not render his claim for damages under TRFRA moot, they nevertheless argued that Walters's lack of standing prevented him from obtaining any relief based upon an alleged violation of the Yellowquill *Compromise and Settlement Agreement*.

 While mootness and standing are interrelated, they actually present separate legal principles. A trial court is prohibited from deciding a moot controversy. *Trulock v. City of Duncanville*, 277 S.W.3d 920, 923 (Tex. App.—Dallas 2009, no pet.). This prohibition is rooted in the separation of powers doctrine contained in those provisions of the Texas and United States Constitutions that prohibit courts from rendering advisory opinions. *City of Dallas v. Woodfield*, 305 S.W.3d 412, 416 (Tex. App.—Dallas 2010, no pet.). The mootness doctrine implicates subject matter jurisdiction. *Id.* at 416 (citing *Trulock*, 277 S.W.3d at 923). A case is moot if there are no live controversies between the parties and any decision rendered would be an advisory opinion. *Id.* (citing *Trulock*, 277 S.W.3d at 924). "If a case becomes moot, the parties lose their standing to maintain their claims." *Id.* If the case is moot, it should be dismissed. *Id.*

 Standing to sue or "standing to maintain a claim" means that the party in question has a sufficient stake in the matter in controversy to obtain a judicial resolution of that dispute. A trial court has no subject matter jurisdiction over a claim made by a plaintiff who does not have standing to assert it. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). In order to have standing "a

plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical." *Id.* at 304-05. As such, standing is an integral component of subject matter jurisdiction which is a legal question subject to *de novo* review. *Woodfield*, 305 S.W.3d at 416 (citing *Trulock*, 277 S.W.3d at 923).

Livingston and TDCJ argue that Walters lacks standing to obtain any relief based on his breach of contract claim. As previously stated, on September 15, 2014, Walters filed his *Second Amended Petition* adding an allegation of breach of contract based upon a *Compromise and Settlement Agreement* reached between TDCJ and another Native American inmate, Jolene Yellowquill. Yellowquill alleged that Livingston's predecessor, Wayne Scott, and others had violated her First Amendment rights by denying her access to a "sacred pipe" and "sacred tobacco." Without admitting a violation of her rights of religious freedom, in settlement of all claims and controversies, TDCJ agreed to conduct a "Sacred Pipe Ceremony" twice a month in the unit where Yellowquill was incarcerated. The *Compromise and Settlement Agreement* further provided that "[i]nmates participating in the Sacred Pipe Ceremony will be permitted to smoke ceremonial tobacco." The agreement also provided that inmates would be required to purchase their own pipes and they would not be entitled to smoke more than one teaspoon of ceremonial tobacco. All ceremonies were to be conducted outdoors and TDCJ retained the right to cancel a previously scheduled ceremony in the event of inclement weather. TDCJ also retained the discretion to cancel a ceremony "in the event of serious security problems, including, but not necessarily limited to riots and lockdown situations." Based on the express terms of the *Compromise and Settlement*

*Agreement*, TDCJ contends Walters was neither a party to the agreement nor a third-party beneficiary and that he was not, therefore, personally aggrieved by any alleged breach of that agreement.

 "The fact that a person might receive an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract." *MCI Telecommunications Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (citing RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 315 (1979)). A third party to a contract can sue to enforce that contract "only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *Id.* To qualify as one for whose benefit a contract was made, the third party must show that he is either a "donee or creditor beneficiary of the contract, and not one who is benefited only incidentally by performance of the contract." *Id.* "In determining whether a third party can enforce a contract, the intention of the parties is controlling" and the court will not create a third-party beneficiary contract by implication. *Id.* Consequently, a presumption exists that a contract exists solely for the benefit of the parties to that contract "unless it 'clearly appears' that they intended a third party to benefit from the contract." *Id.* (quoting *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1975)). To overcome this presumption and create a legally enforceable third-party beneficiary contract, an "agreement must clearly and fully express an intent to confer a direct benefit to the third party." *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).

Walters was not a party to the *Compromise and Settlement Agreement* and at no point was the agreement made conditional on extension of similar rights and privileges to any inmate other than Yellowquill. Furthermore, it is not clearly apparent that Walters or any other similarly-situated inmate was ever intended to be a third-party beneficiary of that agreement. Accordingly, Walters did not overcome the presumption that the *Compromise and Settlement Agreement* was intended solely for the benefit of the express parties to that agreement. Because Walters was not a third-party beneficiary of that agreement, he has no standing to assert any claim for relief based on an alleged breach thereof.

 Furthermore, because Walters is no longer subject to any prospective injury due to his release from incarceration, he lacks standing to assert any claim for prospective injunctive relief based upon an alleged violation of TRFRA. Accordingly, issue one is overruled as to Walters's breach of contract claim and his claim for prospective injunctive relief under TRFRA, but sustained as to his claim for damages or declaratory relief under TRFRA or pursuant to his constitutional civil rights or due process causes of action.

ISSUE TWO—STATUTE OF LIMITATIONS

 By his second issue, Walters maintains the trial court erred in finding that his claims were time-barred by TRFRA's statute of limitations. In the trial court, Livingston and TDCJ contended that, even if Walters did possess a right to personally smoke a sacred ceremonial pipe during his incarceration as a part of his religious beliefs, his TRFRA claims were barred by the one-year statute of limitations found in section 110.007(a) of the Texas Civil Practice and Remedies Code. That section provides as follows:

[a] person must bring an action to assert a claim for damages under this chapter not later than one year after the date

the person knew or should have known of the substantial burden on the person's free exercise of religion.

Tex. Civ. Prac. & Rem. Code Ann. § 110.007(a) (West 2011).

■ As an elemental statement of applicable law, a trial court cannot grant summary judgment based on a statute of limitations that does not apply to the cause of action in question. Here, the statute of limitations relied upon by TDCJ specifically applies only to causes of action brought pursuant to chapter 110 of the Texas Civil Practice and Remedies Code. It does not apply to Walters's alleged constitutional civil rights or due process causes of action, nor does it apply to his alleged contract cause of action. Therefore, to the extent that the trial court relied upon this statutory provision to dismiss any claim or cause of action not arising out of TRFRA, it abused its discretion.

Furthermore, as to those claims that were based on an alleged violation of TRFRA, the amended motion for summary judgment argued to the trial court that Walters's "cause of action arose either on January 26, 2012, the day he changed his religious preference to Native American or on September 8, 2011, the day TDCJ banned Native American communal pipe smoking." As discussed more fully below, nowhere did TDCJ contend below, as it does now, that Walters's cause of action arose on April 2, 2012, the date he was transferred to a non-Native American unit.

■ Changing one's religious preference for purposes of TDCJ classification does not give rise to a claim or cause of action for violation of that person's religious freedoms. It is axiomatic that a cause of action for violation of TRFRA accrues only when a violation of that statute occurs. In that respect, for purposes of TRFRA, a new violation occurs whenever

a government agency "substantially burdens" a person's free exercise of religion unless that burden is "in furtherance of a compelling governmental interest" and is the "least restrictive" means of furthering that interest. Tex. Civ. Prac. & Rem. Code Ann. § 110.003 (West 2011). Merely alleging that Walters changed his religious preference did not establish the accrual of his cause of action.

■ Livingston and TDCJ also alleged that Walters's cause of action accrued when the official policy regarding personal use of a ceremonial pipe changed. In the trial court, they contended this change occurred at a TDCJ meeting held on September 8, 2011. To support that contention, Livingston and TDCJ attached "Exhibit J" to its *Amended Motion for Summary Judgment.* Exhibit J is an unsworn, uncertified document purporting to be a "Meeting Agenda" between six participants (Thomas Prasilka, Bill Pierce, Clint Morris, Cynthia Milne, Steve Bohl, and R.C. Thaler) dated September 8, 2011. The agenda purports to review the arguments for and against the policy of allowing inmates to personally smoke a ceremonial pipe during Native American religious services, concluding with a "consensus" that there would be "[n]o communal offender pipes," "[n]o offender owned or possessed pipes," and a *recommendation* that a ceremonial pipe smoking ceremony be held once a month at the Daniel Unit, "with smoking to be done only by the volunteer chaplain." Because this exhibit is not competent summary judgment evidence, it cannot support the trial court's order granting summary judgment on the basis of limitations.

Additionally, Livingston and TDCJ contended below that the official TDCJ policy was reflected by "Policy No. 09.01 (rev.

5)," a copy of which was attached to the *Amended Motion for Summary Judgment* as "Exhibit D." Exhibit D is appropriately supported by a sworn business records affidavit and is, therefore, competent summary judgment evidence. Of significance, however, is the fact that the policy is dated "July 2012," without specifying a particular date. Even if we were to assume for the purpose of this argument alone that Walters's cause of action accrued on the date the policy was adopted, it would be impossible for TDCJ to establish that more than one year elapsed, as a matter of law, between the adoption of the official policy in "July 2012" and the filing of Walters's original petition on July 11, 2013.

▮ In an apparent attempt to overcome problems associated with trying to establish that Walters's cause of action accrued on either September 8, 2011 or January 26, 2012, as originally alleged, Livingston and TDCJ now claim, via their appellate briefing, that Walters's cause of action is time barred because it arose on April 2, 2012, (the date he was transferred to a non-Native American unit) more than "465 days prior to the July 11, 2013 filing of his suit." Relying on statements contained within Walters's appellate briefing, Livingston and TDCJ contend Walters conceded his cause of action accrued on that date. They further support this claim by alleging Walters knew or should have known that he was not receiving the religious accommodation he desired when, on April 2, 2012, he was transferred to a non-Native American unit "where he had no access to a Native American Chaplain or volunteer, no access to sacred pipe ceremonies, or other Native American devotional items that are permitted on Native American designated units." Not only is this argument disingenuous by relying on appellate briefing rather than summary judgment pleadings and associated evi-

dence, it totally fails to comport with any of the allegations made in Livingston and TDCJ's *Amended Motion for Summary Judgment.* This court cannot affirm summary judgment on grounds not raised below. *Casso,* 776 S.W.2d at 553 (stating that "all theories in support of a summary judgment, as well as opposing issues, must be presented in writing to the court at the hearing").

Accordingly, to the extent that the trial court may have granted summary judgment based on the one-year statute of limitations for any cause of action arising under TRFRA or otherwise, it abused its discretion. Issue two is sustained.

CONCLUSION

The judgment of the trial court is affirmed as to Walters's breach of contract claim and his claim for prospective injunctive relief under TRFRA. The judgment of the trial court is reversed and the cause is remanded as to his claim for damages or declaratory relief under TRFRA or pursuant to his constitutional civil rights or due process causes of action.