

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00218-CV

ANTHONY ARTHUR CUCOLO III, APPELLANT

V.

RAYE VIRGINIA "GINGER" CUCOLO, APPELLEE

On Appeal from the 424th District Court
Blanco County, Texas[1]
Trial Court No. CV08544, Honorable Evan C. Stubbs, Presiding

April 4, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Anthony Arthur Cucolo III ("Tony") appeals from an order entered in an action brought by Raye Virginia Cucolo ("Ginger") to enforce their final decree of divorce.[2] We reverse the order of the trial court in part and affirm in part.

---

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Third Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

[2] We will refer to the parties by their nicknames to avoid confusion.

BACKGROUND

Ginger and Tony were divorced in December of 2018. Their son and two daughters were adults at the time of the divorce. When the parties' children were younger, they obtained student loans to attend college. Tony cosigned the loans but Ginger did not. Ginger testified that she and Tony promised their children that if the children went to college, Ginger and Tony would pay their loans. Ginger and Tony's final decree of divorce included a section entitled "debts to petitioner," which provided:

> IT IS ORDERED AND DECREED that Petitioner, ANTHONY A. CUCOLO, III, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold Respondent, RAYE VIRGINIA "GINGER" CUCOLO, and her property harmless from any failure to so discharge, these items:
> . . .
> P-7. The following debts, charges, liabilities, and obligations:
> a. American Education Services student loan, Account number XXX4591;
> b. Discover student loan, Account number XXX4681; and
> c. Discover student loan, Account number XXX4702.

After February of 2020, Tony stopped making payments on the children's student loans. The children were all in their early thirties at the time. According to Ginger, the children were not able to pay their student loans, so she "stepped in" and gave them money for their loan payments. She testified that the student loans would have "possibly" gone into default if she had not done so. On August 19, 2021, Ginger wired $30,000 to one daughter and $45,000 to the other daughter to pay off their loans in full. In October,

she sent a demand for indemnification to Tony seeking $107,423.97 in reimbursement for student loan payments.[3]

On February 11, 2022, Ginger filed her second amended second motion for enforcement of the divorce decree. She sought indemnification from Tony for the $107,423.97 she provided their daughters to pay their student loans. At the hearing on Ginger's motion, she modified her request to seek only $75,000.

Following the hearing, the district court entered a second enforcement order finding that Tony had failed to indemnify Ginger and ordering him to pay her $75,000 over the course of 80 months. The order also awarded Tony $7,500 in attorney's fees. Tony filed this appeal.

## ANALYSIS

Tony raises four issues on appeal. First, he asserts that Ginger lacked standing to seek indemnification and enforce payment of a debt owed to a third party and allocated to Tony in the divorce decree when the debt was not in default and Ginger was not liable for it. Second, Tony contends that no right to indemnification arose for funds that Ginger gifted their two daughters when she was not liable on the student loans. Third, Tony maintains that the evidence is legally insufficient to support the trial court's judgment. Finally, he claims that the trial court erred in awarding a judgment against him for the amount ordered to be indemnified.

---

[3] The couple's son's loan was not paid off at the time of the hearing on this matter and Ginger's demand for indemnification did not reflect any payments made on the son's behalf. Tony testified that he had recently made a payment on the son's loan.

<u>Issue 1: Standing</u>

Tony first argues that Ginger lacks standing to obtain relief on her claim for indemnification because there was no controversy and Ginger did not have an interest in the claim. We review questions of standing de novo. *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). Standing is a component of subject matter jurisdiction. *Id.* Standing to sue means that the party in question has a sufficient stake in the matter in controversy to obtain a judicial resolution of that dispute. *Walters v. Livingston*, 519 S.W.3d 658, 665 (Tex. App.—Amarillo 2017, no pet.). A trial court does not have subject matter jurisdiction over a claim made by a plaintiff who lacks standing to assert it. *Id.* "To maintain standing, a plaintiff must show: (1) an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021).

In determining whether a plaintiff has alleged a concrete injury sufficient to meet the standing requirement, courts look to the plaintiff's pleadings. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (citation omitted). Thus, the mere fact that a plaintiff may not ultimately prevail on the merits of her lawsuit does not deprive the plaintiff of standing. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008); *see also Perez v. Turner*, 653 S.W.3d 191, 200–02 (Tex. 2022) (court's standing analysis focuses on nature of injury, not merits of claim).

A review of Ginger's live pleading shows that she has standing. In her second amended second motion for enforcement of the divorce decree, Ginger alleged that Tony was required to pay the loans but failed to do so, thus breaching their contract or failing to keep his promise to Ginger to pay them. She further alleged that Tony's failure to pay caused her to pay $75,000 and that Tony was obligated to indemnify her. Ginger's claims reflect a concrete injury and a real controversy between the parties that will be resolved by the court. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012). Ginger pleaded facts sufficient to establish that she has standing on her claim. Therefore, we overrule Tony's first issue.

Issue 2: Right to Indemnification

Having concluded that Ginger has standing, we turn to Tony's second issue, in which he contends that the trial court erred in awarding Ginger relief on her claim for indemnification. Tony asserts that when Ginger wired $75,000 to their daughters, she did so voluntarily, with no obligation to do so and without consideration. Thus, he maintains, Ginger's provision of the funds was a gift. *See In re Marriage of Skarda*, 345 S.W.3d 665, 671 (Tex. App.—Amarillo 2011, no pet.) ("A gift is a transfer of property made voluntarily and gratuitously, without consideration."). Ginger responds that indemnification is a proper legal remedy because she was bound by promissory estoppel to pay the loans and had a contractual right to indemnification.

We review the trial court's ruling on a post-divorce motion for enforcement of a divorce decree under an abuse of discretion standard. *In re Manor*, No. 07-16-00143-CV, 2018 Tex. App. LEXIS 2068, at *3 (Tex. App.—Amarillo Mar. 21, 2018, pet. denied)

5

(mem. op.) (explaining that trial court retains continuing subject matter jurisdiction to clarify and enforce the decree's division of property and may render further orders to assist in implementation of prior order). A trial court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to guiding rules or principles. *See Hargrove v. Hargrove*, No. 03-15-00415-CV, 2016 Tex. App. LEXIS 2438, at \*1 (Tex. App.—Austin Mar. 9, 2016, no pet.) (mem. op.). We review a trial court's ruling on a conclusion of law de novo. *See Hegar v. American Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020).

There are two types of indemnity agreements: those that indemnify against liabilities and those that indemnify against damages. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999). Broad language that holds the indemnitee harmless against all claims and liabilities indicates an agreement to indemnify against liability. *Id.* When one has promised to indemnify against liability, a cause of action accrues to the indemnitee only when the liability has become fixed and certain, as by rendition of a judgment. *Id.* at 208. In contrast, a cause of action for breach of an agreement to indemnify against damages accrues when the indemnitee suffers actual loss by being compelled to pay a settlement or judgment. *Krueger Eng'g & Mfg. Co. v. Admiral Truck Servs.*, No. 14-01-00035-CV, 2002 Tex. App. LEXIS 2740, at \*25 (Tex. App.—Houston [14th Dist.] Apr. 18, 2002, no pet.).

Here, Tony was ordered to indemnify and hold Ginger and her property "harmless from any failure to . . . discharge" his obligation to pay the student loans. The "Indemnification" section of the parties' final decree of divorce further provides:

> if any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt, an obligation, a liability, an act, or an omission

6

of the other party liable for such debt, obligation, liability, act or omission of the other party, that other party will, at that other party's sole expense, defend the party not assuming the debt, obligation, liability, act or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

The indemnification provision requires Tony to indemnify Ginger if any claim is initiated seeking to hold Ginger liable for a debt assumed by Tony. Tony asserts that this is an agreement to indemnify against liability, and we agree. *See Ingersoll-Rand Co.*, 997 S.W.2d at 207.

It is well settled that "a claim based on a contract that provides indemnification from liability does not accrue until the indemnitee's liability becomes fixed and certain." *Id.* at 208. Generally, the indemnitee's liability is established by a judgment. *See Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 432–33 (Tex. 2015). An indemnitor may not be held liable for a purely voluntary payment by an indemnitee. *See Sun Oil Co. v. Renshaw Well Serv., Inc.*, 571 S.W.2d 64, 67 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.).

Ginger claims that Tony erroneously interprets the indemnification provision as being "conditioned upon a formal claim, action, or proceeding." She cites *Gunn v. McCoy* for the proposition that a wrongdoer-indemnitor may be made to indemnify the indemnitee before the judgment is assigned against the indemnitee—indeed, before the cause of action accrues and before limitations begin to run. 554 S.W.3d 645, 677–78 (Tex. 2018). To the extent Ginger relies on *Gunn* for the proposition that no "claim, action, or proceeding" is required for the indemnification provision to apply, her reliance is

7

misplaced. *Gunn* clarified that an indemnitee's claim for indemnity is ripe for determination when the trial court renders its judgment against the indemnitor, even though an appeal may be pending. *Id.* at 678; *see also Ingersoll-Rand Co.*, 997 S.W.2d at 209 (indemnitee may bring claim against indemnitor before judgment is assigned against indemnitee; such claims are contingent on accrual). *Gunn* does not negate the plain terms of the parties' indemnification agreement, which conditions indemnity on the initiation of a claim, action, or proceeding. While we agree that Ginger was not required to show a final judgment taken against her to trigger the indemnification provision, she was nonetheless required to establish that someone sought to hold her liable for payment of the loans. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 457 (Tex. 2008) (wrongdoer may be made to indemnify one who has been "subjected to, or is sought to be held liable for" damage caused by his wrong).

"[T]he duty to indemnify arises from proven, adjudicated facts." *Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 275 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *see also Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) (duty to indemnify depends on facts establishing liability in underlying suit); *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 204–05 (Tex. 2004) (sub. op.) (existence of duty to indemnify often depends on resolution of disputed facts). That is, a judgment for indemnity necessarily requires a determination of liability issues. Here, Ginger did not present any evidence that either the children or the creditor looked to her for payment of the student loans. She did not show that any claim, action, or proceeding had been initiated seeking to hold her liable for the debt, much less that she was subject to a fixed and certain liability.

8

Ginger alleges that she "faced exposure and liability for promissory estoppel claims by her children" because the promise she and Tony made to their children to pay their student loans is enforceable by promissory estoppel. Even if promissory estoppel could be applied to enforce the parties' promise to the children to pay the student loans, promissory estoppel must be pled. *See Lone Star Air Sys., Ltd. v. Powers*, 401 S.W.3d 855, 861–62 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Ginger did not present this theory in her motion for enforcement and Tony had no opportunity to respond to it.[4] In short, this theory was not before the trial court and was not adjudicated in the enforcement action. Therefore, we decline to consider this argument as a basis for affirming the trial court's order. *See Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 284, 290 (Tex. App.—Dallas 2008, pet. denied) (declining to affirm trial court's order based on legal theory not presented to trial court and to which other party had no opportunity to respond).

Ginger failed to establish that she faced liability on the student loans and thus failed to establish that Tony's duty to indemnify her for payment of the loans had arisen. In the absence of proof giving rise to a claim for indemnification, the trial court abused its discretion in ordering Tony to indemnify Ginger in the amount of $75,000. We sustain Tony's second issue.

---

[4] Ginger raised promissory estoppel as an alternative theory to her breach of contract claim against Tony, alleging that he failed to keep his promise to her to pay the children's student loans. She did not argue that she was subject to liability to the children because her promise to them was enforceable under the doctrine of promissory estoppel.

9

Issue 3: Sufficiency of the Evidence

In his third issue, Tony asserts that the evidence admitted at trial is legally insufficient to support a finding that Ginger paid her daughters' student loans, that Tony violated the divorce decree, and that Tony breached the contract in the decree. Under the abuse of discretion standard, sufficiency of the evidence is not an independent ground of error but is a relevant factor in assessing whether the trial court abused its discretion. *See Hargrove v. Hargrove*, No. 03-15-00415-CV, 2016 Tex. App. LEXIS 2438, at *3 (Tex. App.—Austin Mar. 9, 2016, no pet.) (mem. op.).

We have already determined that the trial court abused its discretion because Ginger did not establish her right to indemnification. Because our disposition of the threshold indemnity issue resolves this appeal, we need not reach Tony's third issue. TEX. R. APP. P. 47.1.

Issue 4: Money Judgment

In his fourth issue, Tony claims that the trial court erred in awarding a judgment for the sum of $75,000 ordered to be indemnified, essentially giving Ginger judgment creditor status. Because we have determined that the trial court erred in ordering Tony to indemnify Ginger, we conclude that the trial court also erred in granting Ginger a money judgment for $75,000. We sustain Tony's fourth issue.

**CONCLUSION**

For the foregoing reasons, we reverse the trial court's order awarding indemnity to Ginger and granting her judgment in the amount of $75,000. We affirm the portion of the

trial court's order awarding attorney's fees to Tony. We deny Ginger's request for a remand on the appellate attorney fee issue and render judgment that Ginger take nothing on her claims.

Judy C. Parker
Justice

11